COMMUNITY MENTAL HEALTH SERVICES OF BELMONT, HARRISON AND MONROE COUNTIES, OHIO Plaintiff,

v.

MENTAL HEALTH AND RECOVERY BOARD OF BELMONT, HARRISON AND MONROE COUNTIES, et al., Defendants.

No. C2–03–581.

United States District Court, S.D. Ohio, Eastern Division.

April 22, 2004.

Harry Woodrow White, St. Clairsville, OH, for Plaintiff.

Franklin J. Hickman, Hickman & Lowder Co., L.P.A., Cleveland, OH, for Defendants.

### OPINION AND ORDER

FROST, District Judge.

This matter is before the Court upon the Motion to Dismiss of Defendant Michael F. Hogan ("Hogan"), Director of the Ohio Department of Mental Health ("ODMH"), Both In His Official and Individual Capacities (Doc. # 70); Brief of Defendants MHR Board and Linda Pickenpaugh In Support of Motions to Dismiss and for Summary Judgment on Plaintiff's Second Amended Complaint (Doc. # 71); Plaintiff's Memorandum In Opposition to the Motions to Dismiss of Defendants Hayes and Hogan (Doc. # 75); Plaintiff's Memorandum In Opposition to the Motion to Dismiss or In The Alternative For Summary Judgment Of Defendants MHRB And Pickenpaugh (Doc. # 76); Reply Memorandum of Defendant Thomas Hayes In Support of Defendant's Motion to Dismiss (Doc. # 83); Reply Memorandum In Support of Defendant Hogan's Motion to Dismiss (Doc. # 84); Reply of MHR Board and Linda Pickenpaugh In Support of Defendants' Motion to Dismiss (Doc. # 85).

### I. NATURE OF PROCEEDINGS

Plaintiff Community Mental Health Services of Belmont, Harrison and Monroe Counties, Ohio ("CMHS") Second Amended alleges four claims against defendants. All defendants have filed motions to dismiss plaintiff's claims for lack of subject matter jurisdiction and failure to state a claim for which relief may be granted. Additionally, Defendants Hogan and Hayes move the Court to dismiss plaintiff's claims against them in their individual capacity. Defendant MHRB argues that, as a political subdivision acting as an extension of the state, it is immune from liability pursuant to the 11th Amendment. Plaintiff opposes defendants' motions, arguing that plaintiff has set forth valid claims against defendants, individual defendants Hogan and Hayes are not entitled to qualified immunity, and that Defendants MHRB and Pickenpaugh are not entitled to 11th Amendment immunity.

### II. FACTS

Plaintiff CMHS is a non-profit corporation organized in the State of Ohio whose principal purpose is to provide mental health services to the areas of Belmont, Harrison and Monroe counties. (Second Am. Compl. at 3, ¶ 6.) CMHS contracts with the Mental Health Recovery Board (the MHRB) to provide mental health services to both Medicaid and non-Medicaid recipients in the above counties. *Id.* at 5, ¶ 18. Pursuant to this contract, CMHS receives reimbursement for the mental health services that it has provided to Medicaid eligible individuals from the combination of federal, state and local matching funds. *Id.* ¶ 17.

Defendant MHRB is a political subdivision of the State of Ohio (defined in Ohio Revised Code § 340.01(B)). The MHRB receives Medicaid and other funds from the Ohio Department of Mental Health ("ODMH") for purpose of contracting with third parties to provide mental health services to individuals who are eligible for

Medicaid as well as individuals who are not Medicaid-eligible in the counties of Belmont, Harrison and Monroe, Ohio (the "District"). The MHRB has been designated to administer the community mental health services Medicaid program ("Community Medicaid Program") by Defendants Hogan and Hayes. (Second Am. Compl. at 3, ¶ 7). Defendant Pickenpaugh is the Executive Director of MHRB. *Id.* ¶ 8.

Defendant Hayes is the Director of the Ohio Department of Job and Family Services ("ODJFS"), the agency of the State of Ohio designated as the single state agency to administer Ohio's Medicaid program. (Second Am. Compl. at 3–4, ¶ 9.) Defendant Hogan is the Director of ODMH, which has been designated by ODJFS to administer the Community Medicaid Program. *Id.* at 4, ¶ 10.

In the state fiscal year ("SFY") 1998, the MHRB and the CMHS had a Medicaid contract in place to provide mental health services to both Medicaid and non-Medicaid eligible individuals. (Second Am. Compl. at 5, ¶ 18.) In SFY 1998, the CMHS also contracted with the MHRB to provide non-Medicaid services. *Id.* Submitted with the non-Medicaid contract was a budget which identified the funds available to pay for mental health services that CMHS would provide to Medicaid and non-Medicaid eligible individuals alike. (Sec. Am. Compl. at 5, ¶ 19.) During SFY 1998, the CMHS also had a "Provider Agreement" with ODJFS in place. *Id.* at ¶ 18.

In the fall of 1998, MHRB's auditors audited CMHS for SFY 1998. (Second Am. Compl. at 6, ¶ 22.) As part of the audit, the MHRB performed a "reconciliation," which determines whether a contractor, like CMHS, has provided more units of service than budgeted to Medicaid-eligible individuals and/or others, and whether

the contractor's expenses for those services were less than those projected. *Id.* at ¶ 23. Upon the audit and reconciliation, MHRB's auditors determined that the CMHS should refund Medicaid Federal Financial Participation funds to the MHRB. CMHS repaid these funds. The MHRB audit was subsequently finalized and closed. *Id.* ¶ 24.

After the audit was closed the MHRB demanded that the CMHS re-pay Medicaid matching funds in the amount of $73,166.76 for SFY 1998. (Second Am. Compl. at 6, ¶ 26.) In May and June of 2003, the MHRB unilaterally withheld $10,000.00 each month from payments due CMHS from its SFY 2003 contract to re-pay the alleged Medicaid match overpayment until it received $73,166.67. *Id.* at 7, ¶ 27.

Thereafter, Defendant Hogan directed the MHRB to stop withholding payments from CMHS in accordance with ODJFS's request. (Second Am. Compl. at 7, ¶ 33.) The MHRB returned $20,000.00 to CMHS. Plaintiff submits that Defendant Hayes has threatened to take future action to recover funds paid to CMHS based upon its SFT 1998 audit. *Id.* at 35.

Plaintiff claims that on June 3, 2003, ODMH told CMHS that Hogan withheld approval of the MHRB's Mutual System Performance Agreement ("MSPA") because of the number of client grievances against CMHS. (Second Am. Compl. at 10, ¶ 48.) Additionally, plaintiff submits that on July 8, 2003, not less than six ODMH officials arrived at CMHS and attempted to conduct a search and seizure. *Id.* at ¶¶ 50–52. Plaintiff further states that ODMH contacted CMHS clients who had not requested such contact. *Id.* at ¶ 53.

First, Plaintiff claims that Defendants MHRB, ODMH and ODJFS deprived plaintiff of its rights within the meaning of

the Due Process Clause of the Fourteenth Amendment of the United States Constitution (the "Constitution") when defendants "unilaterally and intentionally misappropriated funds due and owing to plaintiff" for Medicaid services CMHS provided to the District. (Second Am. Compl. Count 1.) Plaintiff's Second Count sets forth a claim against MHRB and ODMH for the violation of plaintiff's due process rights by subjecting plaintiff to "continued harassment and interference with purported client rights investigations." *Id.* Count 2. Count Three of Plaintiff's Second Amended Complaint alleges that ODMH has violated plaintiff's right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the Constitution when ODMH arrived at plaintiff's facility and demanded access to its premises. Finally, Plaintiff claims that Defendants MHRB violated plaintiff's rights pursuant to the Fourth and Fourteenth Amendments by failing to train Defendant Pickenpaugh.

As stated *infra,* all defendants move the Court to dismiss all plaintiff's claims against defendants.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a Complaint should be dismissed if it is clear that no relief could be granted under any set of facts that might be proved consistent with the pleadings. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). The rule permits courts to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded material allegations as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993).

A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." The function of a complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Dunn v. Tennessee,* 697 F.2d 121, 125 (6th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). However, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). Bare assertions of legal conclusions are insufficient. *See id.; Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir.1993).

That said, the Court will grant a motion for dismissal under Rule 12(b)(6) only if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim.

### IV. DISCUSSION

#### Alleged Violation of Due Process In Connection With Misappropriation of Funds

■ CMHS alleges that its right to due process was violated when Medicaid payments were withheld by the MHRB after such withholding was allegedly "author-

ized" by or at the purported direction of Defendant Hogan (Director of ODMH) and that Defendants ODJFS and Hayes ( Director of ODJFS) allowed the MHRB to collect alleged overpayment to CMHS by withholding money from Medicaid payments. Defendants argue that plaintiff's claim is impermissible under the Eleventh Amendment. The Court agrees.

The Eleventh Amendment bars all suits against unconsenting states or one of its agencies or departments. *See Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Ohio has not waived its immunity to suit in federal court. *State of Ohio v. Madeline Marie Nursing Homes No. 1 and No. 2,* 694 F.2d 449, 460 (6th Cir.1982). Defendants ODMH and ODJFS are state agencies. Defendants Hogan and Hayes, acting as directors of these agencies are state officials. Thus, pursuant to the Eleventh Amendment, this Court does not have jurisdiction to adjudicate plaintiff's claims; Plaintiff's due process claims shall be dismissed. *See Madeline Marie Nursing Homes No. 1 and No. 2,* 694 F.2d at 457 –458 (holding that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by Citizens of another State. It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment).

Plaintiff cites to *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) to support its proposition that its due process claim is not barred by the Eleventh Amendment. *Ex Parte Young* exempts from Eleventh Amendment exclusion "claims seeking remedies designed to end a continuing violation of federal law." *Id.* at 68. Plaintiff argues there is an ongoing violation here, in that Ohio law affords CMHS no procedural protection from a future due process violation if defendants chose to take, or authorize the taking of, funds from CMHS. (Second Am. Compl. ¶ 61).

The exemption enumerated in *Ex Parte Young* is inapplicable here. In the case *sub judice,* it is uncontested that the funds withheld by the MHRB have been returned to plaintiff. (Def. Hogan Mot. Dismiss at 9.) Moreover, Defendant Hayes, in his letter to Hogan, directed the return of the withheld monies and unequivocally declared that any future withhold of any sums required a hearing. The letter states:

> The CMH Board is withholding Medicaid payments owed to a Medicaid provider for Medicaid services without prior notice or hearing. All Medicaid providers are entitled to due process before any government agency can withhold payments due to the provider. Due process is also required for Medicaid providers that dispute their obligations to the Medicaid program arising from rates paid in the prior fiscal periods. A hearing must be afforded to any provider before funds are withheld.

> ODMH will need to take corrective action against the CMH Board to cease its actions of withholding payments due to the Medicaid provider. Once the withholding by the CMH Board stops, ODJFS staff will work with ODMH to determine the most appropriate course of action which may include ODJFS conducting an administrative hearing on the matter.

(Second Am. Compl. Ex. A.) Upon receipt of Hayes's letter, Hogan directed the MHRB (by letter addressed to Pickenpaugh) to stop withholding payments from CMHS as recovery for past reconciliation of Medicaid match funds. *Id.* Exhibit B.

The above evidence proves that defendants have fully returned the withheld funds to plaintiff and that no future withholding will occur without a hearing. Although plaintiff asserts that defendants continue to violate plaintiff's due process rights (Pl.'s Mem. Opp'n. at 10), Plaintiff fails to set forth *how* defendants continue to deprive plaintiff of due process, nor does plaintiff offer any evidence of such alleged violation. For example, plaintiff claims that Defendants Hayes and Hogan have "threatened to press forward with their unlawful taking of plaintiff's funds and unlawful investigation" (Pl.'s Mem. Opp'n. at 11) but plaintiff has not alleged any specific facts to support this contention.

■ The Eleventh Amendment mandates that any notice or declaratory relief against a state official must be ancillary to some sort of prospective relief to pass constitutional muster. *See Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Cotton v. Mansour,* 863 F.2d 1241 (6th Cir.1988). As this Court held, in *Coleman v. Hairston,* 1990 WL 482465, *5 (S.D.Ohio Aug. 9, 1990) [emphasis added]:

> [T]he Supreme Court's and the Sixth Circuit's [E]leventh [A]mendment jurisprudence now focuses on the time that a court grants final relief, and whether, *at that time,* there is a violation of federal law that may be enjoined. *See Green,* 474 U.S. at 74, 106 S.Ct. 423. As long as the state defendant is *now* complying with federal law, there is no act or practice that we can declare illegal, nor can injunctive or notice relief be granted.

In the instant case, the state defendants are not engaged in any illegal activity. Even if plaintiff succeeds in establishing that the defendants' withholding of Medicaid funds violated plaintiff's due process rights, any relief sought by plaintiff for such violation is retrospective in nature.

This Court does not have jurisdiction over plaintiff's claims. *See Green, supra* at 64 ( [w]hen there is no continuing violation of federal law the Eleventh Amendment specifically precludes a federal court from issuing declaratory relief).

■ Plaintiff additionally disputes the assertion that the MHRB, as a political subdivision, is entitled to Eleventh Amendment immunity. The Court is cognizant of the fact that the Eleventh Amendment's bar to suit in federal court does not generally extend to counties and similar municipal corporations. *See Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The protection of the Eleventh Amendment applies to political subdivisions of the state, however, when the political subdivision is acting as an extension of the state. *Alkire v. Irving,* 330 F.3d 802, 811–813 (6th Cir.2003).

■ The Eleventh Amendment protects the MHRB to the extent that the MHRB acts on behalf of ODJFS and ODMH in implementing the mental health Medicaid program. While the MHRB is an ADAMH Board created by county boards of commissioners pursuant to Ohio Rev. Code Chapter 340, its Medicaid role is defined by Ohio law. *See* Ohio Rev.Code § 5111.022 which establishes the authority of ODJFS to enter into interagency agreements the Medicaid program. *See also* Ohio Rev.Code § 5111.025 which authorizes the director of ODJFS to define the payment for Medicaid services provided by community mental health facilities and the role ADAMH boards in that process; Ohio Rev.Code § 5111.912 which defines the duty of the MHRB to pay match for community mental health Medicaid services.

The MHRB's role within the Medicaid the Belmont–Harrison–Monroe district on behalf of ODJFS, a *state agency.* The MHRB performs these duties under the

oversight and control of ODJFS. Pursuant to federal law, ODJFS must retain all discretion in the development of rules, policies and procedures in the Medicaid program. 42 C.F.R. § 431.10(e). The rules, policies and procedures of ODJFS are binding on all local agencies which administer the plan. 42 C.F.R. § 431.10(a)(2). It is evident that MHRB's role as a Medicaid provider is defined in state law and that the state has control over the MHRB's participation in the Medicaid program. *See Alkire,* 330 F.3d at 812–813.

■ · Furthermore, under the Medicaid rules, state agencies like ODMH and ultimately ODFJS, are responsible for any Medicaid match which would ordinarily be paid by the MHRB. *See* Ohio Rev.Code § 5111.02; Ohio Administrative Code § 5101:3–27–05(A). Thus, the state is at risk for actions or inaction by the MHRB in its role as a Medicaid sub-recipient. As the MHRB is administering the Medicaid program on behalf the state, and is subject to the supervision and control of ODJFS, the Court determines that it is an extension of the state for Medicaid purposes. As an extension of the state, the MHRB is entitled to Eleventh Amendment immunity for actions arising from its role in the Medicaid program.[1]

The MHRB has returned all funds withheld from CMHS. The Court has before it Hayes's explicit directive to Hogan that the CMH Board return to plaintiff any withheld Medicaid payments. Hayes goes further to direct that all Medicaid providers are entitled to due process before any government agency can withhold payments due to the provider. (Second Am. Compl. Exhibit B.) Moreover, Hayes states "[a] hearing must be afforded to any provider before funds are withheld." *Id.* Upon receipt of this letter, Hogan directed Pickenpaugh to stop withholding payments from CMHS and to remit to CMHS any payments to date that have been withheld. (Second Am. Compl. Exhibit B.) The Court is satisfied that defendants are not committing any ongoing violation of plaintiff's right to due process.

Defendants have ceased withholding plaintiff's funds and have returned to plaintiff all funds previously withheld. Thus, this Court does not have jurisdiction to grant retrospective relief for this alleged constitutional violation. Moreover, although plaintiff claims to also be seeking prospective injunctive relief from defendants' alleged continuous constitutional violation, the Court finds no evidence that defendants are engaged in an ongoing constitutional violation warranting prospective relief. Thus, pursuant to the Eleventh Amendment, defendants' motion to dismiss plaintiff's due process claims against defendants is granted.

### Alleged Violation of Due Process In Connection With Client Rights Investigation

■ Plaintiff's claim that Defendants MHRB and ODMH have deprived CMHS

---

1. Plaintiffs' claims against Pickenpaugh are claims against the MHRB, thus the Eleventh Amendment protects both the MHRB and Pickenpaugh acting in her official capacity. Plaintiff's argument that Defendants MHRB and Pickenpaugh (as the Director of the MHRB) waived Eleventh Amendment protection by removing this case to federal court is not well-taken. Plaintiff's reliance on *Lapides v. Bd. of Regents,* 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002) to support this proposition is misplaced. In *Lapides,* the Supreme Court held that where the state legislature explicitly waives immunity to a state claim in state court, removal to federal court will be construed as a waiver of Eleventh Amendment immunity. 535 U.S. at 621, 122 S.Ct. 1640. In the instant case, the MHRB seeks Eleventh Amendment immunity only with respect to the MHRB's administration of the Medicaid program. The MHRB does not assert immunity to any state claim, thus *Lapides* is inapplicable.

of its liberty and property interests in its business by subjecting it to continued harassment and interference in connection with purported client rights investigations must be dismissed. Plaintiff is seeking declaratory and prospective relief requesting the Court to find: (1) that ODMH and MHRB, on behalf if ODMH, does not have the authority to conduct client rights investigations and (2) that the defendants must afford CMHS due process in their conduct of client rights investigations. (Second Am. Compl. Count 2).

Plaintiff attacks the authority of ODMH (and that of Defendant Hogan as Director of ODMH) to investigate client grievances. Such authority is dictated by state law. *See* Ohio Rev.Code Chapter 5119. Pursuant to Ohio law ODMH has the sole the power to establish a program to protect and promote the rights of persons receiving mental health services. Additionally, ODMH is required by the Ohio general assembly to investigate all client rights investigations. To determine whether ODMH has the right to conduct client rights investigations and whether the ODMH may delegate this responsibility to other agencies (like MHRB), would require this Court to both interpret Ohio law and determine whether a state agency is complying with state law. The Eleventh Amendment precludes this Court from doing so.

As discussed *infra*, the Eleventh Amendment bars all suits against unconsenting states or one of its agencies or departments, regardless of the nature of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Missouri v. Fiske*, 290 U.S. 18, 27, 54 S.Ct. 18, 78 L.Ed. 145 (1933). Ohio has not waived its immunity to suit in federal court. *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir.1982). This Court does not have jurisdiction to determine the scope of authority that Ohio's legislature intended to bestow upon ODMH, a state agency.

 Plaintiff's allegations against the MHRB in Count Two of the Second Amended Complaint also fail to state a claim against the MHRB. Plaintiff asserts that the MHRB failure to afford plaintiff a procedure through which it can contest client grievance investigations deprived plaintiff of due process. (Second Am. Compl. ¶ 66–67; Pl.'s Mem. Opp'n. at 15.) Nowhere, however, does plaintiff explain exactly what right they have been deprived of. There is simply no allegation of how the client rights investigations affected any right of plaintiff protected by the Constitution. In considering procedural due process claims, the Court first determines whether the interest at stake is within the Fourteenth Amendment's protection of liberty and property. *See Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir.1997). Plaintiff's claimed "interest in the conduct of its business" is insufficient to set forth a claim for the deprivation of due process.

### Alleged Unlawful Search and Seizure

 Plaintiff's final claim; that any search by ODMH (and Hogan, as its Director) of plaintiff's premises, office, client records and information provided to employees violates plaintiff's right to be free from unreasonable searches and seizures, is insufficient to set forth a violation of the Fourth Amendment. At the outset, the Court notes that ODMH and Hogan have not engaged in an unreasonable search and seizure. According to Plaintiff's Second Amended Complaint, defendants *attempted* to conduct an unlawful search and seizure on July 8, 2003. (Second Am. Compl. ¶ 50.) Plaintiff has not alleged that defen-

dants unreasonably searched or seized anything on July 8, 2003.

■ Furthermore, as Defendant Hogan emphasizes, CMHS has not established that CMHS has a reasonable expectation of privacy in the CMHS health care facility, information given to CMHS employees and CMHS client records, when these things pertain to a client rights investigation. The determination of whether a reasonable expectation of privacy exists is determined by the totality of the circumstances, considering the degree of intrusion upon an individual's privacy and the degree to which the search is needed to protect a government interest. *United States v. Knights*, 534 U.S. 112, 118–119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001).

CMHS does not have a reasonable expectation of privacy in its clients' records. The clients themselves have the privacy expectation. On July 8, 2003, Hogan attempted to see client records for which Hogan had obtained signed releases. Hogan had the express authority from the clients to examine their records. CMHS does not have a Fourth Amendment right to prohibit Hogan from examining these records.

Furthermore, during an investigation into client rights CMHS's privacy right in its premises and information provided to its employees is outweighed by the government interest in protecting client rights. *See Blue v. Koren*, 72 F.3d 1075, 1081 (2nd Cir.1995) (nursing home search involving matters related to a health care facility's compliance with patient care rules and regulations the facility's right to privacy is virtually none existent.) Defendant Hogan is responsible, pursuant to Ohio law, for protecting and promoting the rights of persons receiving mental health services. *See* Ohio Rev.Code Ch. 15. The General Assembly has granted Hogan the authority to conduct investigations of client rights violations by obtaining all relevant information regarding the client grievance. Ohio Admin. Code 5122:2–1–02(G)(1)(f)-(g); 5122:2–1–02(H)(2)(e)-(f). Ohio's statutory and regulatory scheme shows that the state places great importance upon the rights of persons receiving mental health services and intended those investigating alleged violations of clients' rights to have access to all information relevant to ensuring client rights.

■ The Court has determined that no search and seizure occurred on July 8, 2003. The Court has also determined that CMHS does not have a reasonable expectation of privacy in its premises, employee information and client records when such items are relevant to client rights investigations. Therefore, plaintiff's claim for unlawful search and seizure fails.[2]

### *Failure to Supervise/Failure to Train*

■ Plaintiff's final claim, asserted against Defendants MHRB and Pickenpaugh (as its Director) alleges that MHRB's failed to train and supervise its employees, including Pickenpaugh, and that such failure resulted in the violation of plaintiff's constitutional rights. (Second

---

**2.** The Court additionally notes that the plaintiff's mere speculation that ODMH will conduct an unreasonable search and seizure does not constitute a "continuing violation of federal law." *Ex Parte Young, supra.* Thus, plaintiff has failed to set forth a claim for prospective injunctive relief over which this Court would have jurisdiction under the Eleventh Amendment. Furthermore, whether the conduct of the defendants was authorized by Ohio Rev.Code Chapter 5119, or any other state statute, is a question of state law interpretation and the question of whether a state official violated state law in carrying out official responsibilities is a question for Ohio courts. *See Pennhurst*, 465 U.S. at 121, 104 S.Ct. 900.

 

Am. Compl. Count Four.) At the outset, the Court finds that to the extent plaintiff's failure to train claim implicates defendant's appropriation of funds, policy development, allocation of resources and maintaining reserve accounts, the claim is dismissed. *See Bogan v. Scott–Harris,* 523 U.S. 44, 55–56, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) (legislative acts such as discretionary, policymaking decisions implicating the budgetary priorities of the city and services the city provides to its constituents are entitled to immunity).

 Plaintiff's remaining allegations, that Defendant MHRB allowed Defendant Pickenpaugh to "abuse the public trust" and "reduce available mental health services in the district" are insufficient to identify a deficiency in MHRB's training program that is closely related to plaintiff's ultimate injury. *City of Canton v. Harris,* 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), explains that for a policy or custom to be actionable under 42 U.S.C. § 1983, a plaintiff must allege a failure to train that reflects a "deliberate" or "conscious" choice by the municipality and that the identified deficiency in the training program is closely related to plaintiff's ultimate injury.

In its claim plaintiff identifies no allegation of intent nor any facts to allege the required nexus between the asserted failure to train and any constitutional violation alleged. Plaintiff has failed to set forth a failure to train/supervise claim against the MHRB.

### V. *CONCLUSION*

For the foregoing reasons, Defendants' ODMH and Hogan motion to dismiss plaintiff's second amended complaint (doc. # 70) is **GRANTED**. As defendants' previous motion to dismiss (doc. # 34) is incorporated herein, the motion is **MOOT** and shall be removed from the docket.

Defendants' ODJFS and Hayes motion to dismiss plaintiff's second amended complaint (doc. # 72) is **GRANTED**. As it is incorporated herein, defendant's previous motion to dismiss (doc. # 33) is MOOT and shall be removed from the Court's docket. Defendants' MHRB and Pickenpaugh's motion to dismiss plaintiff's second complaint (doc. # 71) is **GRANTED**. This case is hereby **TERMINATED**.

**IT IS SO ORDERED.**