# LAPIDES *v.* BOARD OF REGENTS OF UNIVERSITY SYSTEM OF GEORGIA ET AL.

No. 01–298.   Argued February 25, 2002—Decided May 13, 2002

*David J. Bederman* argued the cause for petitioner. With him on the briefs were *Michael J. Bowers* and *Patrick W. McKee.*

*Irving L. Gornstein* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Olson, Assistant Attorney General McCallum, Deputy Solicitor General Clement, Mark B. Stern,* and *Alisa B. Klein.*

*Devon Orland,* Assistant Attorney General of Georgia, argued the cause for respondents. With her on the brief were *Thurbert E. Baker,* Attorney General, *Kathleen Pacious,* Deputy Attorney General, and *John C. Jones* and *Patricia Downing,* Senior Assistant Attorneys General.

*Julie Caruthers Parsley,* Solicitor General of Texas, argued the cause for the State of Texas et al. as *amici curiae* urging affirmance. With her on the brief were *John Cornyn,* Attorney General, *Jeffrey S. Boyd,* Deputy Attorney General, and *Lisa R. Eskow,* Assistant Solicitor General, and the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *Bruce M. Botelho* of Alaska, *Ken Salazar* of Colorado, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *James E. Ryan* of Illinois, *Steve Carter* of Indiana, *Thomas J. Miller* of Iowa, *Carla J. Stovall* of Kansas, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.,* of Maryland, *Thomas F. Reilly* of Massachusetts, *Jennifer M. Granholm* of Michigan, *Mike Moore* of Mississippi, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *David Samson* of New Jersey, *Roy Cooper* of North Carolina, *Wayne Stenehjem* of North Dakota, *Betty D. Montgomery* of Ohio, *W. A. Drew Edmondson* of Oklahoma, *D. Michael Fisher* of Pennsylvania, *Paul G. Summers* of Ten-

nessee, *Mark L. Shurtleff* of Utah, *William H. Sorrell* of Vermont, and *Jerry W. Kilgore* of Virginia.*

JUSTICE BREYER delivered the opinion of the Court.

The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, U. S. Const., Amdt. 11, and by its own citizens as well, *Hans* v. *Louisiana*, 134 U. S. 1 (1890). The question before us is whether the State's act of removing a lawsuit from state court to federal court waives this immunity. We hold that it does.

I

Paul Lapides, a professor employed by the Georgia state university system, brought this lawsuit in a Georgia state court. He sued respondents, the Board of Regents of the University System of Georgia (hereinafter Georgia or State) and university officials acting in both their personal capacities and as agents of the State. Lapides' lawsuit alleged that university officials placed allegations of sexual harassment in his personnel files. And Lapides claimed that their doing so violated both Georgia law, see Georgia Tort Claims Act, Ga. Code Ann. § 50–21–23 (1994), and federal law, see Civil Rights Act of 1871, Rev. Stat. § 1979, 42 U. S. C. § 1983 (1994 ed., Supp. V).

All defendants joined in removing the case to Federal District Court, 28 U. S. C. § 1441, where they sought dismissal. Those individuals whom Lapides had sued in their personal capacities argued that the doctrine of "qualified immunity" barred Lapides' federal-law claims against them. And the District Court agreed. The State, while conceding that a state statute had waived sovereign immunity from state-law suits in state court, argued that, by virtue of the Eleventh Amendment, it remained immune from suit in federal court.

---

*\*John Townsend Rich* filed a brief for Ceres Marine Terminals, Inc., as *amicus curiae* urging reversal.

See U. S. Const., Amdt. 11 (limiting scope of "Judicial power of the *United States*" (emphasis added)). But the District Court did not agree. Rather, in its view, by removing the case from state to federal court, the State had waived its Eleventh Amendment immunity. See *Atascadero State Hospital* v. *Scanlon,* 473 U. S. 234, 238 (1985) (State may waive Eleventh Amendment immunity).

The State appealed the District Court's Eleventh Amendment ruling. See *Puerto Rico Aqueduct and Sewer Authority* v. *Metcalf & Eddy, Inc.,* 506 U. S. 139, 144–145 (1993) (allowing interlocutory appeal). And the Court of Appeals for the Eleventh Circuit reversed. 251 F. 3d 1372 (2001). In its view, state law was, at the least, unclear as to whether the State's attorney general possessed the legal authority to waive the State's Eleventh Amendment immunity. And, that being so, the State retained the legal right to assert its immunity, even after removal. See *Ford Motor Co.* v. *Department of Treasury of Ind.,* 323 U. S. 459 (1945).

Lapides sought certiorari. We agreed to decide whether "a state waive[s] its Eleventh Amendment immunity by its affirmative litigation conduct when it removes a case to federal court . . . ." Pet. for Cert. (i).

It has become clear that we must limit our answer to the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings. That is because Lapides' only federal claim against the State arises under 42 U. S. C. § 1983, that claim seeks only monetary damages, and we have held that a State is not a "person" against whom a § 1983 claim for money damages might be asserted. *Will* v. *Michigan Dept. of State Police,* 491 U. S. 58, 66 (1989). Compare Tr. of Oral Arg. 57–58 (asserting that complaint also sought declaratory judgment on the federal claim), with complaint, App. 9–19 (failing, implicitly or explicitly, to seek any such relief). Hence this case does not present a valid federal claim against the State. Nor need we address the scope of waiver by removal in a

situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court.

It has also become clear that, in the absence of any viable federal claim, the Federal District Court might well remand Lapides' state-law tort claims against the State to state court. 28 U. S. C. § 1367(c)(3). Nonetheless, Lapides' state-law tort claims against the State remain pending in Federal District Court, § 1367(a), and the law commits the remand question, ordinarily a matter of discretion, to the Federal District Court for decision in the first instance. *Moor* v. *County of Alameda*, 411 U. S. 693, 712 (1973). Hence, the question presented is not moot. We possess the legal power here to answer that question as limited to the state-law context just described. And, in light of differences of view among the lower courts, we shall do so. Compare *McLaughlin* v. *Board of Trustees of State Colleges of Colo.*, 215 F. 3d 1168, 1171 (CA10 2000) (removal waives immunity regardless of attorney general's state-law waiver authority); and *Newfield House, Inc.* v. *Massachusetts Dept. of Public Welfare*, 651 F. 2d 32, 36, n. 3 (CA1 1981) (similar); with *Estate of Porter ex rel. Nelson* v. *Illinois*, 36 F. 3d 684, 690–691 (CA7 1994) (removal does not waive immunity); *Silver* v. *Baggiano*, 804 F. 2d 1211, 1214 (CA11 1986) (similar); and *Gwinn Area Community Schools* v. *Michigan*, 741 F. 2d 840, 846–847 (CA6 1984) (similar).

## II

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the . . . States" by citizens of another State, U. S. Const., Amdt. 11, and (as interpreted) by its own citizens. *Hans* v. *Louisiana*, 134 U. S. 1 (1890). A State remains free to waive its Eleventh Amendment immunity from suit in a federal court. See, *e. g., Atascadero, supra*, at 238. And the question before us now is whether a State waives that im-

munity when it removes a case from state court to federal court.

It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand. And a Constitution that permitted States to follow their litigation interests by freely asserting both claims in the same case could generate seriously unfair results. Thus, it is not surprising that more than a century ago this Court indicated that a State's voluntary appearance in federal court amounted to a waiver of its Eleventh Amendment immunity. *Clark* v. *Barnard*, 108 U. S. 436, 447 (1883) (State's "voluntary appearance" in federal court as an intervenor avoids Eleventh Amendment inquiry). The Court subsequently held, in the context of a bankruptcy claim, that a State "waives any immunity . . . respecting the adjudication of" a "claim" that it voluntarily files in federal court. *Gardner* v. *New Jersey*, 329 U. S. 565, 574 (1947). And the Court has made clear in general that "where a State *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." *Gunter* v. *Atlantic Coast Line R. Co.*, 200 U. S. 273, 284 (1906) (emphasis added). The Court has long accepted this statement of the law as valid, often citing with approval the cases embodying that principle. See, *e. g., College Savings Bank* v. *Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U. S. 666, 681, n. 3 (1999) (citing *Gardner*); *Employees of Dept. of Public Health and Welfare of Mo.* v. *Department of Public Health and Welfare of Mo.*, 411 U. S. 279, 294, and n. 10 (1973) (Marshall, J., concurring in result) (citing *Clark*); *Petty* v. *Tennessee-Missouri Bridge Comm'n*, 359 U. S. 275, 276 (1959) (citing *Clark*).

In this case, the State was brought involuntarily into the case as a defendant in the original state-court proceedings. But the State then voluntarily agreed to remove the case to federal court. See 28 U. S. C. § 1446(a); *Chicago, R. I. & P. R. Co.* v. *Martin*, 178 U. S. 245, 248 (1900) (removal requires the consent of all defendants). In doing so, it voluntarily invoked the federal court's jurisdiction. And unless we are to abandon the general principle just stated, or unless there is something special about removal or about this case, the general legal principle requiring waiver ought to apply.

We see no reason to abandon the general principle. Georgia points out that the cases that stand for the principle, *Gunter, Gardner*, and *Clark*, did not involve suits for money damages against the State—the heart of the Eleventh Amendment's concern. But the principle enunciated in those cases did not turn upon the nature of the relief sought. And that principle remains sound as applied to suits for money damages.

Georgia adds that this Court decided *Gunter, Gardner*, and *Clark* before it decided more recent cases, which have required a "clear" indication of the State's intent to waive its immunity. *College Savings Bank*, 527 U. S., at 675–681. But *College Savings Bank* distinguished the kind of constructive waivers repudiated there from waivers effected by litigation conduct. *Id.*, at 681, n. 3. And this makes sense because an interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of "immunity" to achieve litigation advantages. See *Wisconsin Dept. of Corrections* v. *Schacht*, 524 U. S. 381, 393 (1998) (KENNEDY, J., concurring). The relevant "clarity" here must focus on the litigation act the State takes that creates the waiver. And that act—removal—is clear.

Nor has Georgia pointed to any special feature, either of removal or of this case, that would justify taking the case out from under the general rule. Georgia argues that its motive for removal was benign. It agreed to remove, not in order to obtain litigating advantages for itself, but to provide its codefendants, the officials sued in their personal capacities, with the generous interlocutory appeal provisions available in federal, but not in state, court. Compare *Mitchell* v. *Forsyth*, 472 U. S. 511, 524–530 (1985) (authorizing interlocutory appeal of adverse qualified immunity determination), with *Turner* v. *Giles*, 264 Ga. 812, 813, 450 S. E. 2d 421, 424 (1994) (limiting interlocutory appeals to those certified by trial court). And it intended, from the beginning, to return to state court, when and if its codefendants had achieved their own legal victory.

A benign motive, however, cannot make the critical difference for which Georgia hopes. Motives are difficult to evaluate, while jurisdictional rules should be clear. See *Hanover Star Milling Co.* v. *Metcalf*, 240 U. S. 403, 426 (1916) (Holmes, J., concurring). To adopt the State's Eleventh Amendment position would permit States to achieve unfair tactical advantages, if not in this case, in others. See *Schacht, supra,* at 393–394, 398 (KENNEDY, J., concurring); cf. ALI, Study of the Division of Jurisdiction Between State and Federal Courts 366–367 (1968) (discussing the unfairness of allowing one who has invoked federal jurisdiction subsequently to challenge that jurisdiction). And that being so, the rationale for applying the general "voluntary invocation" principle is as strong here, in the context of removal, as elsewhere.

More importantly, Georgia argues that state law, while authorizing its attorney general "[t]o represent the state in all civil actions tried in any court," Ga. Code Ann. § 45–15–3(6) (1990); see Ga. Const., Art. 5, § 3, ¶ 4, does not authorize the attorney general to waive the State's Eleventh Amendment immunity, *id.*, Art. 1, § 2, ¶¶ 9(e), (f), reprinted in 2 Ga. Code

Ann. (Supp. 1996). Georgia adds that in *Ford,* this Court unanimously interpreted roughly similar state laws similarly, that the Court held that "no properly authorized executive or administrative officer of the state has waived the state's immunity," 328 U. S., at 469, and that it sustained an Eleventh Amendment defense raised for the first time after a State had litigated a claim brought against it in federal court. That is to say, in *Ford* a State regained immunity by showing the attorney general's lack of statutory authority to waive— even after the State litigated a case brought against it in federal court. Why, then, asks Georgia, can it not regain immunity in the same way, even after it removed its case to federal court?

The short answer to this question is that this case involves a State that *voluntarily* invoked the jurisdiction of the federal court, while *Ford* involved a State that a private plaintiff had *involuntarily* made a defendant in federal court. This Court consistently has found a waiver when a State's attorney general, authorized (as here) to bring a case in federal court, has voluntarily invoked that court's jurisdiction. See *Gardner,* 329 U. S., at 574–575; *Gunter,* 200 U. S., at 285–289, 292; cf. *Clark,* 108 U. S., at 447–448 (not inquiring into attorney general's authority). And the Eleventh Amendment waiver rules are different when a State's federal-court participation is involuntary. See *Hans* v. *Louisiana,* 134 U. S. 1 (1890); cf. U. S. Const., Amdt. 11 (discussing suits "commenced or prosecuted against" a State).

But there is a more important answer. In large part the rule governing voluntary invocations of federal jurisdiction has rested upon the problems of inconsistency and unfairness that a contrary rule of law would create. *Gunter, supra,* at 284. And that determination reflects a belief that neither those who wrote the Eleventh Amendment nor the States themselves (insofar as they authorize litigation in federal courts) would intend to create that unfairness. As in analogous contexts, in which such matters are questions of federal

law, cf., *e. g., Regents of Univ. of Cal.* v. *Doe,* 519 U. S. 425, 429, n. 5 (1997), whether a particular set of state laws, rules, or activities amounts to a waiver of the State's Eleventh Amendment immunity is a question of federal law. A rule of federal law that finds waiver through a state attorney general's invocation of federal-court jurisdiction avoids inconsistency and unfairness. A rule of federal law that, as in *Ford,* denies waiver despite the state attorney general's state-authorized litigating decision, does the opposite. For these reasons one Member of this Court has called for *Ford's* reexamination. *Schacht,* 524 U. S., at 394, 397 (KENNEDY, J., concurring). And for these same reasons, we conclude that *Clark, Gunter,* and *Gardner* represent the sounder line of authority. Finding *Ford* inconsistent with the basic rationale of that line of cases, we consequently overrule *Ford* insofar as it would otherwise apply.

The State makes several other arguments, none of which we find convincing. It points to cases in which this Court has permitted *the United States* to enter into a case voluntarily without giving up immunity or to assert immunity despite a previous effort to waive. See *United States* v. *United States Fidelity & Guaranty Co.,* 309 U. S. 506 (1940); *United States* v. *Shaw,* 309 U. S. 495 (1940); see also *Oklahoma Tax Comm'n.* v. *Citizen Band Potawatomi Tribe of Okla.,* 498 U. S. 505 (1991). Those cases, however, do not involve the Eleventh Amendment—a specific text with a history that focuses upon the State's sovereignty vis-à-vis the Federal Government. And each case involves special circumstances not at issue here, for example, an effort by a sovereign (*i. e.,* the United States) to seek the protection of its own courts (*i. e.,* the federal courts), or an effort to protect an Indian tribe.

Finally, Georgia says that our conclusion will prove confusing, for States will have to guess what conduct might be deemed a waiver in order to avoid accidental waivers. But we believe the rule is a clear one, easily applied by both

federal courts and the States themselves. It says that removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum. As JUSTICE KENNEDY has pointed out, once "the States know or have reason to expect that removal will constitute a waiver, then it is easy enough to presume that an attorney authorized to represent the State can bind it to the jurisdiction of the federal court (for Eleventh Amendment purposes) by the consent to removal." See *Schacht, supra,* at 397 (concurring opinion).

We conclude that the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity—though, as we have said, the District Court may well find that this case, now raising only state-law issues, should nonetheless be remanded to the state courts for determination. 28 U. S. C. § 1367(c)(3).

For these reasons, the judgment of the Court of Appeals is reversed.

*It is so ordered.*