EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Manuel R. ("Manny") Suarez Jiménez y Otros<br><br>        Peticionarios<br><br>                v.<br><br>Comisión Estatal de Elecciones y otros<br><br>        Recurridos | Certificación<br><br>2004 TSPR 186<br><br>163 DPR _____ |

Número del Caso: CT-2004-4

Fecha: 30 de diciembre de 2004
(Opinión Disidente emitida por el Juez Asociado señor Corrada del Río)NUNC PRO TUNC

Tribunal de Primera Instancia
Sala Superior de San Juan


Abogada de la Parte Peticionaria:

                Lcda. María Soledad Piñeiro

Abogados de la Parte Recurrida:

                 Lcdo. Pedro Delgado
                Lcdo. Luis F. Estrella Martínez
                Lcdo. Gerardo de Jesús Annoni
                Lcdo. Juan Dalmau
                Lcdo. Thomas Rivera Schatz
                Lcdo. Pedro E. Ortiz Álvarez
                Lcda. Gina R. Méndez Miró
                Lcda. Johanna M. Emmanuelli Huertas
                Lcdo. José A. Carlo Rodríguez
                Lcdo. José E. Meléndez Ortiz, Jr.
                Lcdo. Alberto Rodríguez Ramos


Materia: Solicitud de Certificación de Recurso ante el Tribunal de Primera Instancia, Sala de San Juan


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel R. ("Manny") Suárez
Jiménez y Otros

    Peticionarios

       v.                              CT-2004-4
    Certificación

Comisión Estatal de Elecciones
y Otros

     Recurridos

Opinión Disidente emitida por el Juez Asociado SEÑOR CORRADA
DEL RÍO

(NUNC PRO TUNC)

San Juan, Puerto Rico, a 30 de noviembre de 2004.

La parte peticionaria comparece ante nos mediante la presentación de un recurso de Certificación. Considerado dicho recurso, la mayoría ha procedido a entrar en los méritos del mismo a pesar de que no están presentes los requisitos que, según la ley, han de ser satisfechos para que tal recurso proceda. Por las razones que expondremos a continuación, disentimos de la Opinión emitida por la mayoría de este Tribunal.

Resulta útil esbozar, en apretada síntesis, el trasfondo procesal que ha precedido el recurso ante nuestra consideración. El Comisionado electoral del Partido Nuevo Progresista (P.N.P.) impugnó la

validez de ciertos votos (conocidos comúnmente como "pivazos") ante la Comisión Estatal de Elecciones (C.E.E.), organismo que ostenta jurisdicción primaria para atender y adjudicar asuntos sobre materia electoral. La Comisión adjudicó la controversia ante sí, determinando que un voto bajo la insignia del Partido Independentista Puertorriqueño (P.I.P.) y votos por el candidato a gobernador, así como el candidato a Comisionado Residente del Partido Popular Democrático (P.P.D.) en la papeleta estatal, constituía un voto mixto válido y que como tal, procedía ser contabilizado.

Sobre ese mismo asunto, los peticionarios ante nos acudieron ante el Tribunal de Primera Instancia (T.P.I.) solicitando, entre otras cosas, que se emitiera una sentencia declaratoria a los efectos de que el voto mixto bajo la insignia del P.I.P. y los candidatos del P.P.D. Aníbal Acevedo Vilá y Roberto Prats, son válidos. Ante dicha solicitud, el T.P.I. determinó que el pleito no era uno justiciable, toda vez que el 12 de noviembre de 2004 el presidente de la CEE determinó que las papeletas en controversia constituían un voto mixto válido y que procedía que se adjudicaran como tal. Determinó el tribunal de instancia que de entrar a discutir los méritos del caso, estaría emitiendo una opinión consultiva. A tono con lo anterior, el T.P.I. se negó a interceder en el recurso por las razones que ya hemos expuesto. Por lo cual, el resultado neto de tal determinación fue mantener en efecto la Resolución emitida por la C.E.E..

Inconforme con dicho dictamen, el 18 de noviembre de 2004, la parte peticionaria presentó ante nos recurso de certificación, mediante el cual solicitó que se emita sentencia declaratoria reiterando que los llamados "pivazos" son votos mixtos válidos y que deben ser adjudicados durante el escrutinio general.

Posteriormente, la mayoría concedió a las partes recurridas hasta el medio día del 20 de noviembre de noviembre para que se expresaran. Así las cosas, a las 11:48 de la mañana del día 20 de noviembre de 2004, se presentó una notificación de traslado ("Notice of Removal") al amparo de la sección 1146(d) del Título 28 de U.S.C.. No obstante lo anterior, y en abierta contravención al referido estatuto federal, en horas de la noche del sábado, 20 de noviembre de 2004, la mayoría de este Tribunal expidió el auto de certificación y resolvió que los referidos votos ante su consideración eran válidos y deberían adjudicarse como tal.

De entrada, es menester expresar que discrepamos y consideramos errados los pronunciamientos esbozados por la mayoría al resolver la controversia en sus méritos. No obstante, no procede expresar nuestro criterio al respecto en esta etapa debido a que precisamente constituiría una opinión consultiva, curso proscrito por nuestro ordenamiento jurídico. Por otra parte, el Tribunal llega a unas conclusiones sobre el alegado voto mixto (los llamados "pivazos") sin que ante nos exista un récord con prueba adecuada sobre esta materia para aplicar el derecho, ni para examinar serias cuestiones legales y

constitucionales implicadas en este asunto. En todo caso, un curso más apropiado hubiera sido devolver el caso al Tribunal de Instancia para que celebre las vistas correspondientes que le permitan formular las conclusiones de hecho y de derecho pertinentes.

Disentimos de la Opinión de la mayoría de este Tribunal por entender que no estamos ante un caso o controversia justiciable. Uno de los principios básicos de nuestro derecho constitucional expone que para que un Tribunal pueda adjudicar un asunto, la controversia ventilada ante su consideración debe tratarse de una justiciable. A esos fines, hemos establecido reiteradamente que "los tribunales debemos ser celosos guardianes de nuestra jurisdicción, estando obligados, incluso, a considerar dicho asunto *motu proprio*". *Sánchez v. Secretario de Justicia*, Res. el 28 de junio de 2002, 2002 T.S.P.R. 98. Nuestra autoridad para analizar aspectos relacionados con la justiciabilidad de los pleitos, si ficticios, académicos o colusorios, deriva "del elemental principio de que los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real de obtener un remedio que haya de afectar sus relaciones jurídicas". *ELA v. Aguayo,* 80 D.P.R. 552; *Hernández Torres v. Gobernador*, 129 D.P.R. 824; *Sánchez v. Secretario de Justicia*, *supra.* Hemos establecido además, que "esta limitación al Poder Judicial, que emerge de la constitución y/o la jurisprudencia, nace de una doble realidad: en que los tribunales sólo pueden decidir controversias dentro de un

contexto adversativo, capaz de resolver por medio de un proceso judicial; y de la división tripartita de Gobierno republicano, que asegura que la rama judicial no intervendrá en áreas sometidas al criterio de otros poderes de gobierno". *Sánchez v. Secretario de Justicia*, *supra; Noriega v. Hernández Colón*, 135 D.P.R. 406 (1995).

La jurisprudencia reitera que "un asunto no es justiciable, cuando: se trata de resolver una cuestión política; cuando una de las partes no tiene capacidad jurídica para promover el pleito; cuando después de comenzado el pleito, hechos posteriores lo convierten en académico; cuando las partes buscan obtener una 'opinión consultiva', cuando se promueve un pleito que no está maduro". *Noriega v. Hernández Colón, supra.*

Más aún, en *Ortiz v. Panel F.E.I.*, establecimos que:

> El concepto de opinión consultiva, que es de estirpe constitucional, se define como la ponencia legal emitida por un tribunal cuando no tiene ante sí un caso o una controversia justiciable, y cuyo resultado, por tanto, no es obligatorio. *Black's Law Dictionary*, pág. 1119 (7ma edición 1999). La doctrina de opinión consultiva es integral al concepto constitucional de *'justiciabilidad'* que rige en nuestra jurisdicción, el cual establece como requisito la existencia de un caso o controversia real para el ejercicio válido del poder judicial.
>
> La doctrina de opinión consultiva intenta evitar que se produzcan decisiones en el vacío, en el abstracto, o bajo hipótesis de índole especulativa ya que no es función de los tribunales actuar como asesores o consejeros. *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715, 721 (1980); *E.L.A. v. Aguayo*, 80 D.P.R. 552, 558-560 (1958). En fin, a los tribunales les está vedado emitir opiniones consultivas sujetas a

revisión e interpretación por las otras ramas de gobierno. R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, Vol. I, pág. 116 (1986). *Ortiz Rivera v. Panel F. E. I.*, Res. del 8 de octubre de 2001, 2001 T.S.P.R. 134.

Nos reafirmamos, como lo establecimos anteriormente en *Sánchez v. Secretario de Justicia, supra,* en que "[a]partarnos de esta norma, firmemente desarrollada y férreamente arraigada en nuestra jurisprudencia, es caer irremediablemente en pronunciamientos abstractos, especulativos, y consultivos".

De otra parte, la sentencia declaratoria, remedio solicitado por la parte compareciente, ha sido definida como "un mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra el promovente". *Charana v. Pueblo*, 109 D.P.R. 641, 653 (1980). Añadimos además en *Moscoso v. Rivera*, 76 D.P.R. 481 (1954), que "el ejercicio de esa facultad no es ilimitado y conlleva el uso de una balanceada discreción del Tribunal dentro de ciertas fronteras, contornos y postulados jurídicos". Ante esto, debemos recordar que tan recientemente como en el año 2002, fuimos sumamente enfáticos en establecer que "la legitimación activa de quien pretende utilizar dicho mecanismo [sentencia declaratoria] se rige por los mismos parámetros y normas de la doctrina de legitimación activa: la existencia de un creíble daño real no imaginario o hipotético. No es meritorio poner en marcha la maquinaria judicial en busca de un remedio cuando no existe tal

daño". *Sánchez v. Secretario de Justicia*, *supra*. De manera que, para que el Tribunal pueda emitir una sentencia declaratoria es menester aplicar la doctrina de legitimación activa. Ésta establece que "[e]l promovente de una acción debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el referido daño es real, inmediato y preciso y no abstracto o hipotético; (3) existe conexión entre el daño sufrido y la causa de acción ejercitada, y (4) la causa de acción surge bajo el palio de la Constitución o de una ley". *Col. Peritos Elec. v. A.E.E.*, 150 D.P.R. 327, 331. Según lo anterior, para ostentar legitimación activa, no basta con satisfacer algunos de estos requisitos, sino que por el contrario, es necesario cumplir con todos ellos.

En ese mismo caso, *Sánchez v. Secretario de Justicia*, *supra*, citamos con aprobación a *Steffel v. Thompson*, 415 U.S. 452, (1973), donde el Tribunal Supremo de los Estados Unidos determinó que "es esencial establecer una <u>controversia justiciable</u> bajo la ley de sentencias declaratorias". La manera particularmente laxa en que la mayoría aplica el mecanismo de la sentencia declaratoria en el caso ante nuestra consideración, contrasta drásticamente de la posición que con tanta firmeza asumimos en *Sánchez v. Secretario de Justicia*, *supra*. Esto sin duda crea una crasa inconsistencia en las Opiniones emitidas por este Tribunal, y creará confusión ante la comunidad jurídica de nuestro país, pues adolece de falta de claridad y uniformidad en la aplicación de dicho mecanismo. Ante este precedente establecido por la

mayoría, será tarea difícil para los abogados del país determinar qué recursos pueden ser objeto de la aplicación del mecanismo de la sentencia declaratoria, pues sin duda, luego de la determinación en este caso, los criterios para la aplicación de dicho mecanismo han sido distorsionados.

Ante lo requerido por la doctrina antes expuesta, forzoso es concluir que la parte que comparece ante nos, no satisface los requisitos necesarios para adquirir legitimación activa. Dado que el organismo con jurisdicción primaria para intervenir en el asunto, adjudicó la controversia a favor de la parte que hoy comparece ante nos, no logramos entender cuál es el daño sufrido por la peticionaria. Ausente un fallo en su contra, tampoco podemos atisbar a base de qué, éstos pudieran reclamar legitimación activa.

Resulta extraño e inusitado que este Tribunal resuelva un asunto tan trascendental sin un récord en el Tribunal de Instancia y a pesar de que la C.E.E. resolvió el asunto favorablemente a los peticionarios. Este es otro ejemplo de un activismo judicial que hace daño a nuestra forma democrática de vida.

No obstante lo anterior, nos reiteramos en que este Tribunal carece de jurisdicción para considerar este caso en esta etapa. Disentimos de la interpretación y aplicación que hace la mayoría de este Tribunal en lo relacionado al mecanismo de traslado [*removal*] radicado ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico. En lo pertinente al asunto ante nuestra

consideración, el estatuto federal que regula dicho mecanismo establece lo siguiente:

> (d) Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

El citado estatuto es sumamente claro en establecer que una vez radicada la solicitud de traslado [*removal*] ante el Tribunal Federal, y se notifica oportunamente al Tribunal Estatal con copia de la misma, opera una paralización automática de los procedimientos ante el Tribunal Estatal. La jurisprudencia federal ha ido más allá al establecer que cualquier acción tomada con posterioridad a esta paralización, que repetimos es automática, será nula. Así lo ha dispuesto el Tribunal Supremo de Estados Unidos en *National S.S. Co. v. Tugman* y su progenie:

> Upon the filing, therefore, of the petition and bond,--the suit being removable under the statute,--the jurisdiction of the state court absolutely ceased, and that of the circuit court of the United States immediately attached. **The duty of the state court was to proceed no further in the cause. Every order thereafter made in that court was *coram non judice* [before one who is not a proper judge], unless its jurisdiction was actually restored.** (Énfasis suplido.) 1 S.Ct. 58, 59-60. Véase además, *Great Northern Ry. Co. v. Galbreath Cattle Co.* 46 S.Ct. 439, 440.

Más aún, además de reiterar lo anterior, el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito ha precisado que los tribunales estatales no se pueden

abrogar la potestad de pasar juicio sobre la validez o corrección de las solicitudes de traslado ya que éstas tienen el efecto automático de paralizar los procesos en el foro estatal:

> "In addition, removal under 28 U.S.C. § 1446(e) is automatically "effect[ed]" when the removal petition is filed, bond is posted, notice is sent to adverse parties, and a copy of the petition is sent to the clerk of the relevant state court. Removal thus occurs without any action by the district court. Second, section 1446(e) automatically stays state proceedings when removal is effected, again without the action by the district court:
>
> 'Promptly after the filing of [the] petition for the removal of a civil action and bond the defendant ... *shall give written notice thereof to all adverse parties and shall file a copy of the petition with the clerk of such State court which shall effect the removal and the State court shall proceed not further unless and until the case is remanded.'* (Emphasis added.)
>
> Insofar as the district court's order referred to removal and a stay of local proceedings, it was essentially declaratory of the statute, merely repeating what the statute itself had already automatically effected.
>
> **Finally, the statute has been held to render post-removal proceedings in state court in the removed case void ab initio.** E.D. Systems Corp. v. Southwestern Bell Telephone, 674 F.2d 453, 458 (5th Cir.1982); Arango v. Guzman Travel Advisers Corp., 621 F.2d 1371, 1374, 1375 (5th Cir.1980); 1A J. Moore, Moore's Federal Practice ¶ 0.168[3.-8--4] at 632 & n. 10. The district court's order thus deprived Polyplastics of nothing, **because any action taken by the Puerto Rico court after removal was effected was a nullity anyway, with or without the order against further proceedings."** (Énfasis suplido.) *Polyplastics, Inc.*

*v. Transconex, Inc.* 713 F.2d 875, 880. (1er Cir. 1983).

Soslayando dicha jurisprudencia reiterada, la mayoría certificó su Opinión luego de efectuarse la presentación de la solicitud de traslado [*removal*] ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico y luego de que ésta hubiera sido notificada a este Tribunal. Es decir, la mayoría actuó, emitiendo y certificando su Opinión, ya estando en efecto la paralización automática que establece el mencionado estatuto. De esa manera, su actuación constituye una clara violación a lo establecido en el estatuto federal.

Algunos sostienen que la razón por la que no aplica la paralización según establecido en 28 U.S.C. 1446(d), es porque la solicitud de traslado [*removal*] radicada ante el Tribunal de Distrito Federal no había sido radicada por todas las partes, y que esto era necesario para que el mismo fuera válido.

A tenor con el requisito de unanimidad o "Rule of Unanimity", generalmente todos los demandados deben consentir o ser incluidos como parte en la petición de traslado. Se ha establecido reiteradamente que "in cases involving multiple defendants, all defendants who have been served must join or assent in the removal petition". *Véase Montana v. Abbot Labs.,* 266 F.Supp.2d 250, 260 (D.Mass.2003) citando *Lapides v. Board of Regents of the Univ. Sys. of Ga.,* 535 U.S. 613, 620, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)).

No obstante, se han reconocido excepciones a esta norma. El consentimiento de todos los demandados no es

requerido cuando exista un reclamo separado e independiente contra uno o más de los demandados y cuando un examen de los intereses reales de un demandado revelan una acumulación indebida de las partes, como ocurre en el caso de marras donde los intereses del Comisionado electoral del P.N.P. son distintos e independientes a los de todos los demás demandados.[1] Véase 28 U.S.C. §1441(c), véase además, *Still v. DeBuono,* 927 F. Supp. 125, 129-130.

De esa manera, lo que hizo la mayoría de este Tribunal fue adjudicar sobre la validez de un recurso presentado ante otro tribunal, de distinta jurisdicción, como lo es el Tribunal de Distrito Federal para el Distrito de Puerto Rico. Sin duda, quien está llamado a adjudicar la validez de una solicitud de traslado [*removal*] presentada ante ellos, es el propio Tribunal Federal ante quien la solicitud fue presentada. La razón de la paralización que ocasiona la notificación de la solicitud de traslado [removal] es precisamente esa, pasar juicio sobre la validez del recurso y determinar cual será finalmente el organismo con jurisdicción para atender la controversia. Por ello, este Tribunal carece de jurisdicción para entender en esta etapa en este caso.

BALTASAR CORRADA DEL RÍO
JUEZ ASOCIADO

---

[1] Los demás demandados son: la Comisión Estatal de Elecciones; el Presidente de esa Comisión, Aurelio Gracia; el Comisionado Electoral del P.I.P., y; el Comisionado Electoral del P.P.D. Todos estos demandados favorecen que se adjudiquen los votos en controversia a favor del Lcdo. Aníbal Acevedo Vilá, y el Lcdo. Roberto Prats respectivamente, contrario al reclamo del P.N.P. que es a los efectos de que estos votos se declaren nulos.