TJOFLAT, Circuit Judge,
specially concurring:
I concur with the Court’s conclusion that the Water District is an absent but indispensable party under Rule 19(b). I write separately to address the alternative ground on which the District Court dismissed the Conservationists’ suit: the *1321 Corps’s asserted immunity from suit under the navigation-maintenance exception. I take no position on the scope of that immunity because, for the reasons that follow, I believe it was legal error for the District Court to enter its broader-than-necessary immunity holding when the straightforward analysis required by Rule 19(b) and respect for the Water District’s sovereign interests called for earlier termination of the proceedings. Although district courts are indeed given discretion to choose between multiple nonmerits grounds independently warranting dismissal — that is, the district courts can choose how to “sequence” their rulings on threshold grounds to best dispose of a case — this discretion is not unbounded. And this case, with its strange and convoluted procedural posture, is the exceedingly rare case in which that discretion was exceeded by declining to rule on a nonjurisdictional ground (the Water District’s Rule 19(b) failure-to-join ground) in favor of a jurisdictional basis (the Corps’s Rule 12(b)(1) sovereign-immunity ground).
I.
The Supreme Court has addressed the federal courts’ discretion to choose between available nonmerits grounds for dismissal on three occasions since 1998 in the so-called “jurisdictional-sequencing trilogy” of Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), Ruhrgas AG v. Marathon Oil Company, 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999), and Sinochem International Co. Ltd. v. Malaysia International Shipping Corp., 549 U.S. 422, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). See generally Alan M. Trammell, Jurisdictional Sequencing, 47 Ga. L. Rev. 1099, 1105-10 (2013). Admittedly courts faced with these issues have, to varying degrees, “struggled to apply” the lessons of the jurisdictional-sequencing trilogy, which has been seen as having created something of “a moving target for lower courts.” See id. at 1110, 1111-16; see also Scott C. Idleman, The Emergence of Jurisdictional Resequencing in the Federal Courts, 87 Cornell L. Rev. 1, 4 (2001) (“To date, the lower federal courts have expressed both uncertainty and disagreement over the proper interpretation of the resequencing doctrine, and given its recent vintage, there has been only limited academic commentary on either its validity or its implications.”). Nevertheless, careful examination of the reasoning underlying the Supreme Court’s sequencing decisions with an eye toward the interests at stake in this litigation resolves the issue here. And to the extent line-drawing questions remain about the precise scope of district courts’ discretion to sequence threshold determinations, the task of answering those questions is left for future cases that may not be so easily resolved.
In Steel Co., the Supreme Court rejected the false, though widely embraced, doctrine of “hypothetical jurisdiction,” whereby courts would bypass any inquiry into the existence of their subject-matter jurisdiction to rule on more easily resolved merits grounds. The Court rejected that doctrine, explaining that courts’ invoking it to reach the merits “comes to the same thing as an advisory opinion” because “Mypothetical jurisdiction produces nothing more than a hypothetical judgment.” Steel Co., 523 U.S. at 101, 118 S.Ct. at 1016 (citing Hayburn’s Case, 2 U.S. 408, 2 Dall. 409, 1 L.Ed. 436 (1792)). Though the Court recognized that its own precedent “must be acknowledged to have diluted the absolute purity of the rule that Article III jurisdiction is always an antecedent question,” the Court also emphasized that “[m]uch more than legal niceties are at stake” because the “statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers” struck *1322 between the three branches of the Federal Government. Id. at 101, 118 S.Ct. at 1016. “For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.” Id. at 101-02, 118 S.Ct. at 1016.
In Ruhrgas, the Court qualified the scope of its ruling in Steel Co. to make clear that, though federal courts lack the authority to make merits determinations before their jurisdiction has been established, those courts need not first decide whether they have subject-matter jurisdiction over a proceeding that should be dismissed on other jurisdictional grounds. The messy procedural history of the litigation in Ruhrgas involved a consortium of European buyers who entered into an agreement with Marathon Oil Company and several of its subsidiaries and affiliates for certain gas-licensing rights in the Heimdal Field of the Norwegian North Sea. 526 U.S. at 578-79, 119 S.Ct. at 1567. When that agreement soured, the Marathon Oil plaintiffs filed suit in Texas state court, asserting various state-law claims for fraud, tortious interference with prospective business relations, breach of fiduciary duty, and civil conspiracy. Id. at 579, 119 S.Ct. at 1567-68. The European defendants removed the case to federal court, asserting three bases for federal subject-matter jurisdiction: (1) there would be diversity jurisdiction under 28 U.S.C. § 1332 if one of the plaintiffs, Marathon Oil’s Norwegian subsidiary, were to be stricken as fraudulently joined; (2) there was federal-question jurisdiction under 28 U.S.C. § 1331 based in federal common law; and (3) there was jurisdiction under 9 U.S.C. § 205, which governs international arbitration agreements. See id. at 579-80, 119 S.Ct. at 1568. After the case had been removed, the European defendants then moved to have the case dismissed for lack of personal jurisdiction on the theory that they had insufficient contacts to the State of Texas while the Marathon plaintiffs moved to have the case remanded to state court because the case lacked federal subject-matter jurisdiction. Id. at 580-81, 119 S.Ct. at 1568.
The Supreme Court in Ruhrgas thus faced the question of whether the district court to which the case had been removed must rule first on the issue of its subject-matter jurisdiction, or whether it could instead choose to rule first on the existence of personal jurisdiction. The Court decided the latter. Based on principles of federalism and judicial economy, the Court held that it is not an abuse of discretion for a district court to resolve “a straightforward personal jurisdiction issue presenting no complex question of state law” when the alternative is to first rule on an “alleged defect in subject-matter jurisdiction raisfing] a difficult and novel question” that may have preclusive effect if the proceedings were to be remanded to state court. Id. at 587-88, 119 S.Ct. at 1572. While the Court explained that subject-matter jurisdiction should generally be resolved first because “in most instances” doing so “will involve no arduous inquiry” and the same concerns of “expedition and sensitivity to state courts’ coequal stature should impel the federal court to dispose of that issue first,” the Court declined to impose a bright-line rule to that effect. Id. Although the “character of the two jurisdictional bedrocks” of subject-matter and personal jurisdiction “unquestionably differs” — because “[sjubject-matter limitations on federal jurisdiction serve institutional interests” under Article III, whereas personal jurisdiction “ ‘represents a restriction on judicial power ... as a matter of individual liberty’ ” in line with principles of due process — “[tjhese distinctions do not mean that subject-matter jurisdiction is ever and always the more ‘fundamental.’ ” Id. at 583-84, 119 S.Ct. at 1570 *1323 (citing Steel Co., 523 U.S. at 94-95, 118 S.Ct. at 1012, and Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982)). In short, the Court held that “there is no unyielding jurisdictional hierarchy” and there “are circumstances in which a district court appropriately accords priority to” another threshold determination before reaching the existence of its subject-matter jurisdiction. Id. at 578, 119 S.Ct. at 1567.
The final chapter in the Supreme Court’s jurisdictional-sequencing trilogy further clarified courts’ discretion to choose between threshold grounds for dismissal. The Court’s decision in Sinochem confirmed that, in appropriate circumstances, a district court may dispose of a case on any proper nonmerits ground— including nonjurisdictional grounds — before establishing its subject-matter jurisdiction. That is, district courts may at times rule on discretionary doctrines warranting dismissal that are not compelled by the federal courts’ limited authority over certain categories of matters or certain individual litigants before first establishing subject-matter jurisdiction. See Steel Co., 523 U.S. at 89, 118 S.Ct. at 1010. The factual background of Sinochem involved a suit brought in federal court by a Malaysian shipping company against a Chinese importer seeking compensation for misrepresentations the Chinese importer allegedly made to a Chinese admiralty court to secure a judgment against the Malaysian shipping company. 549 U.S. at 426-27, 127 S.Ct. at 1188-89. The Chinese importer moved to dismiss the suit on several grounds, including lack of subject-matter and personal jurisdiction, international comity, and relevant here, the nonju-risdictional doctrine, of forum non conveniens.[1] Id. at 427, 127 S.Ct. at 1189.
The Sinochem Court held that a district court may “bypass[ ] questions of subject-matter and personal jurisdiction” and dismiss a suit under the doctrine of forum non conveniens “when considerations of convenience, fairness, and judicial economy so warrant.” Id. at 432, 127 S.Ct. at 1192. The Court reasoned that the factual circumstance before it presented “a textbook case for immediate forum non conveniens dismissal” while the required subject-matter inquiry would have “presented an issue of first impression” requiring analysis “at some length” and “[djiscovery concerning personal jurisdiction would have burdened [the Chinese importer] with expense and delay.” Id. at 435, 127 S.Ct. at 1194. Given that the district court “inevitably would dismiss the case without reaching the merits,” requiring a jurisdictional inquiry first would be “all to scant purpose.” Id. When “subject-matter or personal jurisdiction is difficult to determine” and the relevant nonmerits “considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.” Id. at 436, 127 S.Ct. at 1194. The Court cautioned, however, that when “a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground.” Id.
In Levin v. Commerce Energy, Inc., 560 U.S. 413, 130 S.Ct. 2323, 176 L.Ed.2d 1131 (2010), over the objections of Justices Thomas and Scalia, a six-member majority *1324 of the Supreme Court implicitly clarified the caveat in Sinochem that the “proper course” for courts that can “readily determine” a jurisdictional nonmerits ground for dismissal is “to dismiss on that ground.”[2] The issue in Levin was whether a group of producers and consumers of natural gas could sue the Tax Commissioner of Ohio for allegedly discriminatory state taxation. Id. at 419, 130 S.Ct. at 2328-29. The two primary grounds for dismissal facing the district court were comity, which is a prudential doctrine, and the Tax Injunction Act, 28 U.S.C. § 1341, which is jurisdictional in nature. Id. The majority ultimately concluded that comity required that the case be brought first in the Ohio courts and declined to reach the scope of the Tax Injunction Act, citing Sinochem for the proposition that a “federal court has flexibility to choose among threshold grounds for dismissal.” See id. at 432, 130 S.Ct. at 2336-37 (citing Sinochem, 549 U.S. at 431, 127 S.Ct. at 1191).
Justice Thomas, writing for himself and Justice Scalia, concluded that the Levin majority erred by not instead ruling on the jurisdictional grounds for dismissal under the Tax Injunction Act. Justice Thomas faulted the majority for its “misplaced” reliance on Sinochem “because it confuses the fact that a court may” dismiss a case on a nonmerits ground before deciding a jurisdictional ground “with whether, and when, it should.” Id. at 434, 130 S.Ct. at 2337-38 (Thomas, J., concurring). Justice Thomas distinguished the situation in Lev-in from that in Sinochem where the Court determined that it was proper to rule first on the forum non conveniens ground for dismissal before reaching the pending jurisdictional challenges on grounds of efficiency. In Levin, however, there was “no economy to deciding the case on the nonju-risdietional ground” because “[t]he same analysis that supports dismissal for comity reasons subjects this case to the [Tax Injunction] Act’s jurisdictional prohibition.” Id. at 435, 130 S.Ct. at 2338. By declining to follow “the settled principle that judges presented with multiple non-merits grounds for dismissal should dismiss on jurisdictional grounds first,” the majority illegitimately “upends” an “important area of the law.” Id. at 436, 130 S.Ct. at 2339. Justice Thomas’s stricter reading of Sino-chem’s preference for jurisdictional non-merits rulings, however, garnered only two votes.
Distilling what we know from the jurisdictional-sequencing trilogy of Steel Co., ■Ruhrgas, and Sinochem, as later clarified in Levin, several key themes emerge. First, though the federal courts lack the power to issue a merits ruling without the jurisdiction to do so, there is no bright-line rule that categorically determines which nonmerits grounds for dismissing a case must be addressed in which order. Second, it is clear that the district courts have some degree of leeway to sequence these nonmerits grounds for dismissal, but this discretion is not unbounded. The necessary inquiry courts must make when deciding between available nonmerits grounds for dismissal is guided by a non-exhaustive and case-specific set of considerations. Those considerations may include convenience, fairness, the interests served by structural principles such as federalism and comity, and judicial economy and efficiency. Third, although no “jurisdictional hierarchy” requires courts to determine subject-matter jurisdiction before personal jurisdiction, courts are generally expected to resolve jurisdictional nonmerits grounds *1325 for dismissal before nonjurisdictional non-merits grounds. As Levin suggests, however, this preference is hardly insurmountable and may be overcome even in circumstances that do not require the parties or the court to expend additional time or resources before reaching a decision.
II.
To the best of my knowledge, this appears to be the first case squarely presenting a sequencing challenge to a district court’s decision to dismiss a case on the jurisdictional ground of sovereign immunity under Rule 12(b)(1) rather than the nonjurisdictional ground of indispensability under Rule 19(b).[3] In addition to the novelty of the question it presents, this case is further complicated by its procedural posture, which includes two sovereign entities each asserting distinct theories favoring dismissal in response to the Conservationists’ challenge to an intricate federal-state regulatory regime. Balancing the unique circumstances of this case in light of the interests served by the Water District’s indispensability under Rule 19(b) and the Corps’s claim to sovereign immunity, I believe the District Court abused its discretion when it failed, as a matter of law, to properly calibrate these interests. Given their proper weight, the interests at stake in this case tip the balance overwhelmingly in favor of dismissal under Rule 19(b). Because the District Court in the absence of the Water District improperly reached the scope of the Corps’s sovereign immunity, I believe this Court should have vacated that portion of the District Court’s ruling.
First and most critically, the very reasons the Water District is an indispensable party under Rule 19(b) also counsel that Rule ■ 19(b) is the ground that should dispose of this case. The “concrete form” of the dignity and comity interests at stake in affording the proper respect due the Water District as a sovereign entity also strongly favors dismissing the case because of the Water District’s absence. See Pimentel, 553 U.S. at 865-66, 128 S.Ct. at 2190. By ratifying the Conservationists’ voluntary dismissal of the Water District and unnecessarily proceeding to reach the scope of the Corps’s immunity under the navigation-maintenance exception, the District Court set the stage for a potentially expansive ruling in the Water District’s absence. Granting the Corps broad immunity would directly and adversely affect the delicate balance of power struck by the United States and the State of Florida in their management of the Waterway. The Conservationists, whose narrow concerns in this particular litigation do not align with the full range of regulatory interests possessed by the Water District, cannot be expected to serve as an adequate representative of the Water District if the Water District were not joined as a party. And even if the Water District could have waived its Eleventh Amendment immunity or participated as amicus curiae, these limited accommodations would fail to fully vindicate the Water District’s sovereign interests, whether by forcing the Water District to forfeit its rightful immunity from suit or by treating the Water District as little more than an interested bystander. When taken together with the other interests at stake and absent substantial countervailing reasons, the Water District’s sovereign interests strongly favor dismissal under Rule 19(b).
*1326 Second, the Rule 19(b) issue in this case is straightforward and easily resolved whereas defining the scope of the Corps’s immunity under the Clean Water Act’s navigation-maintenance exception is not. Defining the scope of the navigation-maintenance exception here would require interpreting a much-contested and unsettled provision of the Clean Water Act in light of the principles announced in the Supreme Court’s decision in Central Green Co. v. United States, 531 U.S. 425, 121 S.Ct. 1005, 148 L.Ed.2d 919 (2001). And to the extent the answer to that question touches on the constitutional limits of the Corps’s authority, the principles of constitutional avoidance outlined by Justice Brandéis in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346-48, 56 S.Ct. 466, 482-84, 80 L.Ed. 688 (1936) (Brandéis, J., concurring), likewise counsel in favor of dismissal on other grounds. Cf. Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng’rs, 531 U.S. 159, 172-73, 121 S.Ct. 675, 683, 148 L.Ed.2d 576 (2001) (declining to defer to the Corps’s regulation of the term “navigable waters” in the Clean Water Act when “an administrative interpretation of a statute invokes the outer limits of Congress’ power,” especially when doing so would “alter[] the federal-state framework by permitting federal encroachment upon a traditional state power”).
Moreover, the relative ease of deciding the Rule 19(b) ground is made even starker when, as is the case here, the governing federal substantive law at issue expressly indicates that the Water District is at the very least a “necessary” party to any such proceedings. See 33 U.S.C. § 1323(a). Indeed, the Water District’s indispensability in this case is so obvious that the District Court raised it, on its own, as an alternative ground for dismissal. The District Court even went so far as to note that “[t]he [Water] District argues with considerable force that it is indeed an indispensi-ble party, even without regard to the state statute explicitly addressing this issue”— that is, for the purposes of Rule 19(b) urged by the Water District. It is thus a little baffling that the District Court, despite undertaking essentially all of the analysis needed to determine the Rule 19(b) issue, simply declined to rule on this ground at all, much less that it declined to do so as its exclusive basis for dismissal. The District Court rejected the Water District’s repeated- calls to rest its holding on Rule 19(b) as follows:
I disagree. Even if a district court may address other issues without deciding whether it has subject-matter jurisdiction, the assertion that a district court must address other issues first is a hard sell. The Army Corps has properly raised the issue of subject-matter jurisdiction. I choose to address that issue first, and to address the indispensable-party issue only as an alternative basis for dismissal.
Although the District Court was of course correct to note that it possesses a case-appropriate level of discretion to sequence nonmerits grounds for dismissal, that discretion is not unfettered. And though district courts need not explicitly spell out their reasons for choosing how to best manage their own dockets and sequence threshold determinations — and I do not propose to impose any sort of additional clear-statement requirement for sequencing decisions — the basis for the exercise of that discretion must rest on some discernible rationale that is not substantially outweighed by the sort of countervailing considerations relied on in Steel Co., Ruhrgas, and Sinochem. Below I evaluate several rationales that may have motivated the District Court to prioritize dismissing the case based on the Corps’s immunity rather than the Water District’s indispensability. The relative ease of determining the Water District’s indispensability compared to *1327 the difficulty of determining the scope of the Corps’s immunity, however, strongly favors dismissal under Rule 19(b).
Third, ruling on the Water District’s indispensability is a narrower ground for dismissing the case than would be holding that the Corps is immune from suit under the navigation-maintenance exception. By holding the Water District indispensable for purposes of the Conservationists’ suit, the District Court gives full effect to the Water District’s immunity from suit without impinging to the slightest degree on the Corps. Nor would such a ruling have the potential to upset the delicate balance of concurrent authority shared by the Water District and the Corps for purposes of managing the Waterway. In contrast, by entering a ruling on the scope of the Corps’s immunity unnecessary to dispose of this case after the Conservationists managed to drop the Water District from the proceedings, the District Court ran the risk of interpreting the unsettled issue of the Corps’s immunity too broadly, a risk exacerbated by the Water District’s inability to participate fully as a party to the suit.[4] Because Rule 19(b), as the Supreme Court’s decision in Pimentel makes clear, functions in part to protect these sorts of sovereign interests, the broader nature of a determination of the Corps’s immunity also favors dismissal under Rule 19(b).
Fourth, the resources expended by the parties involved in this litigation and the District Court that were required to assess the Corps’s immunity and determine the lack of subject-matter jurisdiction as a factual matter under Rule 12(b)(1) appear to be significantly more extensive than would have been necessary to decide the Water District’s indispensability under Rule 19(b). I suspect that the case could have been disposed of simply by allowing responsive briefing and argument after the Water District first moved to dismiss the case under Rule 19(b) and taking judicial notice of the way in which federal and state agencies share jurisdiction over managing the Waterway. Even if some additional fact-finding would have been called for, such efforts would, at a minimum, need not have been any more extensive than the remarkably generative efforts that have given root to and sustained the procedural thicket that appears fully formed before us.
Importantly, I do not want to overstate my reliance on these efficiency considerations. With the benefit of hindsight, appellate courts can easily second-guess the on-the-ground determinations that district courts must make prospectively when deciding between alternative grounds for dismissal. The difficulty and uncertainty inherent in making necessarily case-specific decisions justifies the district courts’ discretion in the first place, and weighing the likely costs of alternative threshold grounds for dismissal is precisely where that discretion is at its apex. As a general matter, then, the mere fact that a district court’s chosen ground for dismissal later appears to have proven more resource-intensive to decide than would have an available alternative should not constitute an abuse of discretion. Here, the excessive amount of time and effort spent in these proceedings that could have been avoided is simply another, but by no means disposi-tive, consideration favoring dismissal under Rule 19(b).
Taken together, the Water District’s sovereign interests, the relative ease of the alternative analyses, the narrower deci-sional grounds, and the fewer resources required to determine the issues weigh *1328 heavily in favor of dismissal under Rule 19(b). On the other side of the balance, the Corps points us to two considerations that may have motivated the District Court’s decision that the Corps believes offset the considerations favoring dismissal under Rple 19(b): first, that reaching the Corps’s immunity would comport with the general preference ill sequencing decisions for resolving jurisdictional grounds before reaching other nonjurisdictional threshold grounds for dismissal; and second, that the finality of judgments is better served by dismissihg on the ground of the Corps’s immunity.
I disagree. The first countervailing consideration the Corps directs our attention to is the general preference for deciding a jurisdictional threshold ground before a nonjurisdictional one. See Sinochem, 549 U.S. at 436, 127 S.Ct. at 1194 (noting that when “a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground.”). I do agree that, all' else being equal, courts should reach jurisdictional threshold grounds first. But this general preference is just that — a preference. And as the Supreme Court’s recent decision in Levin implies, that preference is hardly insurmountable and all else is rarely equal. Moreover, the force of this preference is even further diminished here because the nonjurisdictional Rule 19(b) ground for dismissal in turn rests in large part on the Water District’s Eleventh Amendment immunity from suit. We have previously recognized that an “assertion of Eleventh Amendment immunity essentially challenges a court’s subject matter jurisdiction.” Seaborn v. State of Fla., Dep’t of Corr., 143 F.3d 1405, 1407 (11th Cir. 1998); but see Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep’t of Hous. & Urban Dev., 639 F.3d 1078, 1084-85 (D.C. Cir. 2011) (noting that “there is considerable uncertainty about sequencing in the Eleventh Amendment context”). As a result, whatever the strength of this general preference for jurisdictional threshold rulings, which would not be dis-positive in any event, that preference provides only slight support for reaching the Corps’s immunity under these circumstances. Again, the unique procedural posture of this case makes it the rare one in which the proper course is to dismiss on a nonjurisdictional threshold ground before reaching a jurisdictional one. But the general preference for deciding jurisdictional grounds first did not alone relieve the District Court from taking into account the other considerations at stake.
Similarly unavailing is the Corps’s remaining rationale of respecting the finality of judgments. In line with the Corps’s theory, the District Court could have decided that dismissing the case for lack of subject-matter jurisdiction on the basis of the Corps’s immunity, which would have been a dismissal with prejudice, would put a decisive end to the Conservationists’ likely resort to further litigation. Read charitably, the Corps seems to be arguing that if the District Court were to dismiss the case under Rule 19(b) and decline to reach the scope of the Corps’s immunity, the Conservationists might then refile their case in Florida state court, where the Water District might be amenable to suit because the Eleventh Amendment would not apply. See Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 616, 122 S.Ct. 1640, 1642, 152 L.Ed.2d 806 (2002). If that were to happen, the Corps would then likely remove the newly refiled case to federal court, bringing the Conservationists’ suit full circle.
These purported finality concerns are overblown. The Corps’s hypothetical, whatever its plausibility may be under a different set of facts, rings hollow here because the Corps overlooks a crucial fact at the center of this litigation: the Conservation *1329 ists brought no claims of any sort against the Water District, which was joined solely for the purpose of complying with the governing federal and state law under which the Conservationists sued the Corps. Should a refiled case be removed to federal court, the parties would then be in essentially the same position they currently occupy. The Water District would once again move to be dismissed as a party and to have the case dismissed under Rule 19(b) because the case cannot proceed in its absence. Moreover, dismissal would also be compelled by principles of res judi-cata — just as would be the case if the Conservationists had refiled the same suit were the District Court’s ruling on the Corps’s sovereign immunity to stand. Cf. Pimentel, 553 U.S. at 872, 128 S.Ct. at 2193 (“As matters presently stand, in any later suit against it Merrill Lynch may seek to join the Republic and the Commission and have the action dismissed under Rule 19(b) should they again assert sovereign immunity.”). Should the Conservationists’ hypothetical refiled case remain in state court, both the Water District and the Corps would be free to assert any available ground warranting dismissal of the case — which is likely one of the reasons the Conservationists decided against filing their suit in state court in the first place.
In short, I struggle to see what, if any, interest in finality would be served by granting the Corps’s preferred sovereign-immunity ground for dismissal that would not be served just as effectively as dismissing the case on the Rule 19(b) ground. To the extent the Corps is seeking an interest not in the finality of this particular litigation but rather an interest in having a court declare that it is immune from all litigation of this sort, such an interest is inapposite to determining how best to sequence threshold grounds for dismissal in any particular ease. In line with the case-by-case . nature of these determinations, which will necessarily result in nonmerits rulings, courts should be careful not to credit such far-reaching and speculative concerns. This is especially true when, as is the ease here, the party seeking the broader ruling attempts to do so to the potential detriment of an absent sovereign entity whose absence is itself an independent ground warranting' dismissal.
The general preference for dismissal on jurisdictional grounds and the concern for the finality of judgments cited by the Corps are insufficient, taken alone and taken together, to counterbalance the considerations that overwhelmingly tip in favor of dismissing the Conservationists’ suit under Rule 19(b). Whatever the precise outer boundaries of the discretion to sequence threshold nonmerits grounds for dismissal may prove to be in other cases, a question which we do not today determine, it is clear that the District Court exceeded those bounds here.

. The doctrine of forum non conveniens vests district courts with the discretion to dismiss a case when another forum would have jurisdiction and trying the case in the plaintiff's chosen forum would be oppressive or vexatious to the defendant or would be otherwise inappropriate based on a weighing of several private- and public-interest factors. The doctrine of forum non conveniens is not mandatory and is therefore nonjurisdictional. See generally Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981).

. Justice Ginsburg wrote the majority opinion on behalf of herself, Chief Justice Roberts and Justices Stevens, Kennedy, Breyer, and Soto-mayor, to which Justice Thomas, joined by Justice Scalia, took exception in his concurrence. Justices Kennedy and Alito each added a brief concurrence as well.

. Although the issue was never reached because the case was ultimately disposed of on comity grounds, the state-party defendant in Levin also raised Rule 19(b) as an alternative ground for dismissal because the plaintiffs failed to join other state utilities involved in administering the allegedly discriminatory state tax. See Levin v. Commerce Energy, Inc., 560 U.S. 413, 419 n.1, 130 S.Ct. 2323, 2329 n.1, 176 L.Ed.2d 1131 (2010).

. As noted above, I express no opinion as to the scope of the Corps’s immunity under the navigation-maintenance exception.