Louanne ATHANASIOU and George
Athanasiou, Plaintiffs

v.

TOWN OF WESTHAMPTON,
et al., Defendants.

Civil Action No. 14–30029–KPN.

United States District Court,
D. Massachusetts.

Signed July 14, 2014.

Michael Pill, Green Miles Lipton, LLP, Northampton, MA, Harry L. Miles, Green, Miles, Lipton, White & Fitz–Gibbon, Northampton, MA, for Plaintiffs.

Nancy Frankel Pelletier, Robinson Donovan, PC, Springfield, MA, Patricia A.

Cantor, Janelle M. Austin, Kopelman & Paige, PC, Boston, MA, for Defendants.

## *MEMORANDUM AND ORDER WITH REGARD TO DEFENDANTS' MOTION TO DISMISS (Document No. 19)*

NEIMAN, United States Magistrate Judge.

Louanne Athanasiou and George Athanasiou ("Plaintiffs") brought this action in state court against the Town of Westhampton ("Town") and its Board of Selectmen ("Selectboard"), including current Selectboard members John F. Shaw, Jr., in his individual and official capacities, James Huston, in his individual and official capacities, and Arthur Pichette, in his official capacity, as well as former Selectboard member Brian Mulvehill, in his individual capacity (together, "Defendants"). On February 12, 2014, Defendants removed the action to this court pursuant to 28 U.S.C. § 1441.

Plaintiffs' claims arise out of a property dispute with the Town of Westhampton, culminating in a letter in which the Town challenged Plaintiffs' assertion of ownership over a parcel of land and a traveled way. Plaintiffs assert that the statements in the letter constitute a taking for public use without just compensation. In particular, Plaintiffs assert in their amended complaint a claim for a taking in pais under M.G.L. c. 79, § 10 (Count I) and a claim under 42 U.S.C. § 1983 for a taking in violation of the Fifth Amendment (Count II).[1] Defendants have filed a motion to dismiss.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73. For the rea-

sons which follow, the court will grant Defendants' motion to dismiss without prejudice.

### I. STANDARD OF REVIEW

When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept the allegations of the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *See Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Coyne v. City of Somerville,* 972 F.2d 440, 443 (1st Cir.1992). Moreover, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what that ... claim is and the grounds upon which it rests.'" *Sepulveda–Villarini v. Dep't of Educ. of P.R.,* 628 F.3d 25, 28 (1st Cir.2010). Recently, the Supreme Court made clear that, under *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a complaint that states a plausible claim for relief, on its face, will a survive a motion to dismiss. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### II. BACKGROUND

The following facts come directly from Plaintiffs' complaint, including two attachments thereto, and are stated in a light most favorable to them. *Young v. Lepone,* 305 F.3d 1, 8 (1st Cir.2002). In 2012, a deed from Cheryl M. Fuller–Malinowski and Stephen S. Malinowski to Plaintiffs

---

1. Plaintiffs also asserted, in their amended complaint, a conspiracy claim under 42 U.S.C. § 1985 (Count III), but they voluntari-

ly dismissed this claim without prejudice pursuant to Fed.R.Civ.P. 41(a)(1)(A)(i). (Doc. No. 18.)

was recorded in the Hampshire Registry of Deeds, along with a survey plan. The deed and survey plan purported to correct description errors in a prior recorded 2010 deed from the Malinowskis to Plaintiffs and its accompanying survey plan. In particular, the 2012 deed and survey plan added a triangular parcel of land located at the intersection of Southampton Road and North Road, as well as a traveled way at the base of the triangular parcel, neither of which were specifically included in the 2010 deed or survey. Plaintiffs allege that the 2012 deed and survey plan are accurate and that they are the owners of the triangular parcel and traveled way.

On April 22, 2013, the Town, acting through its Selectboard, sent Plaintiffs a letter explaining that it had "significant concerns about the accuracy of the description contained in" the 2012 deed and survey plan which "increase[d] the area of [Plaintiffs'] property by approximately 20,-000 square feet."[2] The letter continued: "The Selectboard does not agree that your property includes either the triangular parcel or the traveled way (together, the 'Parcel')" because "[t]he Parcel has not been included with your property on plans since at least 1968, and in deeds going back to at least 1951"; "[t]he Selectboard does not understand that you have exercised control or dominion over the Parcel"; and "[t]he Town has not assessed you for the Parcel, and you have not paid taxes on the land." Rather, the Town explained, "[t]he Parcel appears to have been added whole cloth, and without any basis, to your property." The Town also explained that the public has used the traveled way for more than twenty years to cross between North Road and Southampton Road and, as a result, "the traveled [way] is a public way by prescription."

In its letter, the Town also cited MASS. GEN. LAWS ch. 59, § 12F and explained that the statute "provides a mechanism for the Assessor to determine the owner of the Parcel, at the expense of the purported property owner." After quoting the statute, the Town explained: "Not only is the burden of proof upon the landowner, but the expenses of the Town, including the costs of our legal counsel, may be assessed against the property owner, and a lien imposed upon your property for these costs and expenses." The letter closed by requesting that Plaintiffs contact the Selectboard within ten days

> and agree to appear before the Selectboard to defend your assertion of ownership over the Parcel. If the Selectboard does not hear from you within that time frame, and a meeting is not timely scheduled to discuss this situation, the Town intends to bring a petition in the Land Court to establish title to the Parcel. A lien will be placed on your property for any and all expenditures incurred in relation to this matter as provided by law.

(Exhibit 2 (attached to Amended Complaint).)

Sometime thereafter, Plaintiffs filed an action in the Massachusetts Land Court seeking to clarify their ownership interests in the disputed property. As the parties explained at the hearing on their instant dispute, that action is still pending in the Land Court. Plaintiffs then filed a separate action in the Massachusetts Superior Court, which Defendants removed to this forum. As mentioned, Plaintiffs now allege in their amended complaint that the Town's statements in the April 22 letter constitute a taking of their property without just compensation; in that vein, Plaintiffs assert that the Land Court lacks jurisdiction to award monetary damages for

---

**2.** At the time, the Selectboard consisted of Shaw, Huston, and Mulvehill.

the alleged taking. Plaintiffs also allege in their amended complaint that Defendants failed to follow the statutory procedures for establishing a public way or for taking the triangular parcel.

### III. SUMMARY OF THE PARTIES' POSITIONS

Defendants seek dismissal of this action on a number of grounds. They contend that Plaintiffs have failed to sufficiently allege that they own the property at issue or that the Town's actions constitute a taking of the property. Defendants also argue, pursuant to *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), that the section 1983 claim is not ripe because Plaintiffs have not exhausted available state-law remedies; that Plaintiffs have failed to allege facts demonstrating individual-capacity liability of the Selectboard members and that, in any event, qualified immunity protects them; and that municipal liability is not available because Plaintiffs have failed to allege a policy, custom, or practice which caused the alleged constitutional violation.

In response, Plaintiffs argue that they have alleged that they own the disputed land and that the April 22, 2013 letter amounted to a physical taking of their property. Plaintiffs also argue that qualified immunity does not bar their claims for injunctive relief and that municipal liability is available because the Selectboard had final policymaking authority. Plaintiffs assert as well that their section 1983 claim is ripe for adjudication because they originally brought their state-law claim in state court and properly joined the federal

claim. Plaintiffs nonetheless suggest in the alternative that the court might wish to stay this action pending entry of final judgment in the Land Court action, the results of which could affect their claims here.[3]

### IV. DISCUSSION

The court will first address Defendants' argument that the section 1983 claim is not ripe for failure to exhaust state-law remedies, as that argument necessarily questions the court's subject-matter jurisdiction. In *Williamson County,* the Supreme Court held that a Fifth Amendment takings claim is not ripe in federal court until the plaintiff has first sought "compensation through the procedures the State has provided for doing so." *Williamson County,* 473 U.S. at 194, 105 S.Ct. 3108. This is so, the Supreme Court explained, because "[t]he Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Id.* Thus, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. 3108.

 A number of courts have treated this state-exhaustion requirement as implicating a federal court's subject-matter jurisdiction. *See, e.g., Reahard v. Lee County,* 978 F.2d 1212, 1213 (11th Cir.1992). In recent years, however, the Supreme Court has clarified that this ripeness requirement is a prudential limitation, rather than

**3.** In their motion, Defendants also argue that, despite Plaintiffs' voluntary dismissal without prejudice of their section 1985 claim (Count III), the court should dismiss that claim *with prejudice* because Defendants filed an answer before the voluntary dismissal. In response, Plaintiffs argue that their voluntary dismissal without prejudice of the section 1985 claim was proper under Fed.R.Civ.P. 41(a)(1)(A)(i) because Defendants had not yet filed an answer to their *amended* complaint, which superseded their original complaint. Plaintiffs, in the court's view, have the better argument.

an Article III jurisdictional limitation. *See Horne v. Dep't of Agriculture,* —— U.S. ——, 133 S.Ct. 2053, 2062, 186 L.Ed.2d 69 (2013) ("Although we often refer to this consideration as 'prudential ripeness,' ... we have recognized that it is not, strictly speaking, jurisdictional.") (citation omitted); *Stop the Beach Renourishment, Inc. v. Florida Dep't of Environmental Protection,* 560 U.S. 702, 729 & n. 10, 130 S.Ct. 2592, 177 L.Ed.2d 184 (2010) (noting that the *Williamson County* ripeness objection is not jurisdictional and that "the claim is ripe insofar as Article III standing is concerned, since (accepting petitioner's version of Florida law as true) petitioner has been deprived of property."); *Suitum v. Tahoe Regional Planning Agency,* 520 U.S. 725, 733–34, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997) (describing the *Williamson County* state-exhaustion requirement as a "prudential ripeness" hurdle); *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1012–13, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Whereas an absence of subject-matter jurisdiction operates as an absolute bar on the power of a federal court to hear a case, prudential doctrines entail judicially self-imposed limits on the exercise of federal jurisdiction. *See United States v. Windsor,* —— U.S. ——, 133 S.Ct. 2675, 2685, 2687, 186 L.Ed.2d 808 (2013); *see also Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 670 n. 2, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) ("Ripeness reflects constitutional considerations that implicate 'Article III limitations on judicial power,' as well as 'prudential reasons for refusing to exercise jurisdiction.' ") (quoting *Reno v. Catholic Social Services, Inc.,* 509 U.S. 43, 57 n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993)). And, "[u]nlike Article III requirements—which must be satisfied by the parties before judicial consideration is appropriate—the relevant prudential factors that counsel against hearing [a] case are subject to

'countervailing considerations [that] may outweigh the concerns underlying the usual reluctance to exert judicial power.' " *Windsor,* 133 S.Ct. at 2687 (quoting *Warth v. Seldin,* 422 U.S. 490, 500–501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

■ Here, the court concludes that outright dismissal is not appropriate on the *Williamson County* state-exhaustion grounds. As Plaintiffs explain, they originally brought this action, including the claim under M.G.L. c. 79, § 10, in state court in order to comply with the *Williamson County* requirement. It was *Defendants'* decision to remove the action here, Plaintiffs continue, which has prevented them from exhausting their remedies in state court. After all, the Supreme Court held in *San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal.,* 545 U.S. 323, 346, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005), a state court may hear "simultaneously a plaintiff's request for compensation under state law and the claim that, in the alternative, the denial of compensation would violate the Fifth Amendment of the Federal Constitution." Thus, Plaintiffs cannot be blamed for choosing to assert their Fifth Amendment claim in state court along with their state-law claim. *See id.* ("Reading *Williamson County* to preclude plaintiff from raising such claims in the alternative would erroneously interpret our cases as requiring property owners to 'resort to piecemeal litigation or otherwise unfair procedures.' " (quoting *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 350 n. 7, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986))).

Plaintiffs' arguments are persuasive. In short, by removing the action here and thus invoking federal jurisdiction, Defendants waived the state-exhaustion requirement with respect to the section 1983 claim. *Cf. Pike v. Guarino,* 492 F.3d 61, 71 (1st Cir.2007) (explaining, in the context

of a habeas corpus petition, that "exhaustion is a prudential principle rather than a jurisdictional limitation, so a state may waive the defense of nonexhaustion."). To be sure, Defendants' exhaustion argument is also grounded in part on their assertion that there has simply not been a taking. More on that below. But for purposes of their particular argument with respect to the section 1983 claim, Defendants cannot shift onto Plaintiffs the blame for non-exhaustion at the state level.

This conclusion finds support in two recent decisions, *Sansotta v. Town of Nags Head,* 724 F.3d 533 (4th Cir.2013) and *River North Properties, LLC v. The City and County of Denver,* 2014 WL 1247813 (D.Colo. March 26, 2014). In both cases, just as here, the plaintiffs originally brought state and federal just compensation claims in state court which the defendants removed to federal court. In *Sansotta,* the court held that "[a]llowing the Town to invoke the *Williamson County* state-litigation requirement after removing the case to federal court would fail to fulfill the rationale for this prudential rule and would create the possibility for judicially condoned manipulation of litigation." *Sansotta,* 724 F.3d at 545. The court explained that the *Williamson County* rule "is grounded on the idea that 'state courts undoubtedly have more experience than federal courts do in resolving the complex factual, technical, and legal questions related to zoning and land-use regulations.'" *Id.* (quoting *San Remo Hotel,* 545 U.S. at 347, 125 S.Ct. 2491). But "[a] defendant implicitly agrees [that federal judges can apply state law correctly] when he removes a case involving such a state or municipal law to federal court." *Id.* The court then analogized the situation to *Lapides v. Bd. of Regents of the University System of Georgia,* 535 U.S. 613, 619, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002), in which the Supreme Court held that a state cannot both invoke federal jurisdiction by removing a case to federal court while also seeking to deny the judicial power of the United States by asserting Eleventh Amendment state sovereign immunity. *Id.* at 545–46. "Based on this ability for a state potentially to manipulate litigation, the Court [in *Lapides* ] held that 'removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum.'" *Id.* at 546 (quoting *Lapides,* 535 U.S. at 624, 122 S.Ct. 1640). The *Sansotta* court continued: "if we substitute 'the *Williamson County* state-litigation requirement' for 'Eleventh Amendment immunity,' the logic is precisely the same." *Id.*

In addition to adopting the analysis in *Sansotta,* the court in *River North Properties* explained that application of the ripeness doctrine "turns in part on 'the hardship to the parties of withholding court consideration.'" *River North Properties, LLC,* 2014 WL 1247813, at *9 (quoting *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Development Commission,* 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)). Applying the state-exhaustion requirement, the court held, would result in undue hardship to the plaintiff, in that it would have to re-file the action yet again in state court, "submit to another round of filing fees, conform again to a different set of procedural rules, and experience further delay in resolution of its case—all because of a discretionary decision made by state actors." *Id.* The analysis in both *Sansotta* and *River North Properties* is persuasive. Accordingly, the court declines, on prudential grounds, to dismiss the Fifth Amendment takings claim for failure to exhaust state remedies.

■ That said, the court nevertheless agrees with Defendants' larger argument,

namely, that Plaintiffs have failed to state a claim upon which relief may be granted because, on the facts alleged in the amended complaint, a taking has not occurred. Indeed, certain of the key factual allegations in paragraph 4 of Plaintiffs' amended complaint—that Defendants' April 22, 2013 letter "asserted that ... the Town of Westhampton owns the fee" in the existing traveled way and that "the fee in the triangle of land" northerly of the traveled way "is owned by the Town of Westhampton"—are belied by the letter itself. Indeed, during oral argument, Plaintiffs at best referred to an "attempted taking."

■ Moreover, even were the court to accept some of the inferences Plaintiffs seek to have drawn from the April 22, 2013 letter, the cases cited by Plaintiffs do not support their contention that Defendants have perpetrated a taking of their property. For example, Plaintiffs cite *Yee v. City of Escondido, California,* 503 U.S. 519, 522, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992), for the proposition that "[w]here the government authorizes a physical occupation of property (or actually takes title), the Takings Clause generally requires compensation." But, as mentioned, there are no specific allegations in Plaintiffs' amended complaint that Defendants either authorized a physical occupation of the disputed property or actually took title to it. As the Supreme Court explained, its "jurisprudence involving condemnations and physical takings is as old as the Republic and, for the most part, involves straightforward application of *per se*

rules." *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 535 U.S. 302, 322, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002); *see also id.* at 322 n. 17, 122 S.Ct. 1465 ("When the government condemns or physically appropriates the property, the fact of a taking is typically obvious and undisputed."); *id.* at 324, 122 S.Ct. 1465 (in contrast to regulatory takings, "physical appropriations are relatively rare, easily identified, and usually represent a greater affront to individual property rights").[4] There is no such straightforward taking alleged in Plaintiffs' amended complaint.

Further, the court has not found a single case in which a government defendant's mere statement disputing an individual's ownership over property, as is true here, or even asserting the government's ownership over the property, without anything more, constitutes a physical taking of that property. If anything, the court has found precedent holding that such conduct does *not* constitute a taking. For example, in *Int'l Federation of Professional and Technical Engineers v. United States,* 111 Fed. Cl. 175, 184 (Fed.Cl.2013), the court held that

[t]he government's mere assertions of ownership cannot, standing alone, constitute a taking.... Plaintiff's complaint does not allege that the Navy *did* anything that interfered with any rights plaintiffs had in the Co–Op. Accordingly, without more, plaintiffs' claim that the navy 'asserted' its ownership of the Co–

---

**4.** It is for this reason that the other *Williamson County* ripeness prong—which requires that the government entity first reach a final decision regarding the application of the regulations to the property before a takings claim may be maintained, *Williamson County,* 473 U.S. at 186, 105 S.Ct. 3108—does not apply to physical takings. "In a physical taking case, the final decision requirement is re-

lieved or assumed because '[w]here there has been physical invasion, the taking occurs at once, and nothing the [governmental actor] can do or say after that point will change that fact.'" *Pascoag Reservoir & Dam, LLC v. Rhode Island,* 337 F.3d 87, 91 (1st Cir.2003) (quoting *Hall v. City of Santa Barbara,* 833 F.2d 1270, 1281 n. 28 (9th Cir.1987)).

Op is insufficient to state a claim for a compensable taking.

*Id.* (citations omitted); *see also Central Pines Land Co. v. United States,* 107 Fed. Cl. 310, 325 (Fed.Cl.2010) ("In order to establish a taking, something more than the mere assertion of title is required."). Here, too, Plaintiffs have not only failed to allege any physical appropriation or establishment of title by Defendants, but they have failed as well to allege any interference with their use and enjoyment of the property. Accordingly, without any alleged conduct that could rise to level of a taking for purposes of the Fifth Amendment, Plaintiff's section 1983 claim is simply premature.

The court reaches the same conclusion with respect to Plaintiff's state-law claim. As the Supreme Judicial Court explained, "a property owner is only entitled to damages caused by an actual taking or by the public improvement for which the taking is made; the owner is not entitled to damages caused by plans for a taking that the government does not carry out." *Boston Edison Co. v. Massachusetts Water Resources Authority,* 459 Mass. 724, 947 N.E.2d 544, 558 (2011). As the SJC further explained, public announcements of plans to take property by eminent domain do not entitle property owners to damages, even if such announcements result in a decrease in property values, because "[i]f a government risked increasing its exposure to eminent domain damages as a consequence of communicating its plans, it might choose to remain silent until the time of the actual taking—to the detriment of all parties involved." *Id.* at 558 n. 18. Similarly, holding Defendants liable here for pre-taking correspondence over the status of the property would discourage such communications from occurring in the first place and prevent the amicable resolution of property disputes.

In the end, the court believes that Plaintiffs need to "exhaust" their quiet title lawsuit in Land Court before contemplating further litigation. Simply put, the court is not inclined to encourage the type of "anticipatory lawsuit" represented by the instant action. *Cf. Bowles v. U.S. Army Corps of Engineers,* 841 F.2d 112, 114 n. 5 (5th Cir.1988) ("As Bowles had yet to give the Corps an opportunity to act formally on his proposal, there was no Corps' action for the District Court to review. As the Corps had not yet taken any action, what, pray tell, was Bowles complaining about? We do not wish to encourage such anticipatory lawsuits against the Corps. Administrative proceedings exist for a reason—litigants are expected to exhaust those remedies prior to filing suit.").

## V. CONCLUSION

For the reasons stated, Defendants' motion to dismiss is ALLOWED without prejudice.

SO ORDERED.